In re GRAND JURY SUBPOENA SERVED UPON John DOE, Esq., Petitioner,

Richard ROE, Intervenor-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 638, Docket 84–6319.

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1984.

Decided April 1, 1985.

Rehearing En Banc Granted July 16, 1985.

Timbers, Circuit Judge, filed dissenting opinion.

Mark M. Baker, John H. Jacobs, New York City, for intervenor-appellant.

Michael A. Guadagno, Asst. U.S. Atty., Raymond J. Dearie, U.S. Atty., Edward A. McDonald, U.S. Dept. of Justice, Brooklyn, N.Y., for respondent-appellee.

Before TIMBERS, CARDAMONE and ROSENN,* Circuit Judges.

ROSENN, Senior Circuit Judge.

This case presents an important question concerning the right to have counsel of one's choosing. The issue arises in connection with a grand jury subpoena *duces tecum* served upon an attorney, John Doe, Esquire. Richard Roe (Client), a target of the grand jury's investigation and a long-time client of the attorney, obtained intervenor status and appeals from an order denying a motion to quash the subpoena. Client contends, and the Government concedes, that if the subpoena is enforced, his attorney will be disqualified as counsel if Client is indicted. The Government did make a showing of relevance. The district court, however, rejected the contention that the Government also should be required to make a preliminary showing of need before compelling the attorney to testify. We reverse.

## I.

A grand jury in the Eastern District of New York is currently investigating an organized crime family. Of particular relevance is the grand jury's consideration of evidence that may establish that a certain faction of the crime family constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4) (1982) (a portion of the RICO statute), and that Client headed that "enterprise." As part of this inquiry, the grand jury is interested in determining whether Client paid for, or otherwise arranged for, the legal representation of members of his "crew" (as the faction is known) who were apprehended during the commission of illegal activity. This would, according to the Government, tend to indicate the existence of an enterprise within the meaning of the RICO statute and to point to Client as the leader. In an effort to establish whether Client actually paid or arranged for the legal representation, the grand jury caused a subpoena *duces tecum* to be served upon his attorney, a lawyer who has represented Client for approximately the last 18 years. The subpoena called for the attorney's appearance and the production of records of "fees, monies, property or other things of value received, accepted, transferred or held by [him] ... on his behalf, from, on account of, or on behalf of" twenty-one individuals, several of whom are members of Client's "crew."

On October 5, 1984, the attorney moved for an order pursuant to Fed.R.Crim.P. 17(c) to quash the grand jury subpoena on the ground that the Government had not shown, among other things, either the *relevance* of the materials to the scope of the inquiry or a particular *need* for the materials sought. The attorney also argued that the Government was employing the subpoena as the "ultimate weapon" to disqualify him from the case. The Government responded by submitting an affidavit describing the scope of the grand jury inquiry and the relevance of the materials sought.

The district court denied the motion to quash, finding that the information requested in the subpoena was relevant to the grand jury inquiry and that the attorney had shown no reason why the material should not be provided to the grand jury. The court also held that the possibility of the lawyer's eventual disqualification was far outweighed by the importance of presenting the evidence to the grand jury.

■ The Government agreed to forbear from enforcing the subpoena pending appeal, and the district court granted inter-

---

* Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

venor status to Client for the purpose of bringing this appeal.[1]

## II.

Grand jury subpoenas are issued by the clerk of the court under the court's seal in blank to anyone requesting them without prior court approval or control. Fed.R.Crim.P. 17(a). Although sometimes viewed as instrumentalities of the grand jury, they are "in fact almost universally instrumentalities of the United States Attorney's Office or of some other investigative or prosecutorial department of the executive branch." *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 90 (3d Cir.1973). To protect parties against the abuse of this subpoena power, Fed.R. Crim.P. 17(c) empowers the district court, on motion, to quash or modify a subpoena "if compliance would be unreasonable or oppressive." As noted by the First Circuit in *In Re Pantojas*, 628 F.2d 701, 705 (1st Cir.1980), and reaffirmed recently in *In Re Grand Jury Matters*, 751 F.2d 13, 16 (1st Cir.1984), "[t]he practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena [enforcement] and contempt procedures." Our standard of review of the district court's decision to deny the motion to quash the subpoena in this case is whether it "acted so arbitrarily here as to exceed its very broad, but not limitless, discretion in this area." *In re Grand Jury Matters*, 751 F.2d at 16.

Although the grand jury has the right and duty to procure every man's evidence, *United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–770, 35 L.Ed.2d 67 (1973), the grand jury's powers are not limitless; they are subject to the court's supervisory powers under Fed.R.Crim.P. 17(c), which include the power to quash or modify a subpoena "if compliance would be unreasonable or oppressive." In exercising his supervisory power, "A judge may quash grand jury subpoenas in the proper exercise of his rule 17(c) ... powers even though the subpoenaed materials are not covered by a statutory, constitutional, or common law privilege. *See, e.g., United States v. Winner*, 641 F.2d 825 (10th Cir. 1981)." *In Re Grand Jury Matters*, 751 F.2d at 18.

It may also be helpful to an analysis of the issue before us to state briefly some related or tangential matters that need not be considered. This case does not. involve the integrity of the grand jury or the status of sixth amendment rights during the grand jury proceedings.[2] It is undisputed that the sixth amendment right to counsel does not attach at the grand jury stage. Nor is the attorney-client privilege at stake.[3] Our focus is upon a narrow issue

1. The general rule is that a person served with a subpoena may not appeal a denial of a motion to quash without first resisting the subpoena and being found in contempt. *See Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The rule is different, however, when the subpoena is directed to a third party and the one seeking to quash the subpoena claims that its enforcement will violate one or more of his constitutional rights. *See Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). Thus, a vast majority of the circuits, including the Second Circuit, has allowed an immediate appeal in cases where a party's attorney is subpoenaed. *See, e.g., In re Special Grand Jury No. 81–1 (Leon Harvey)*, 676 F.2d 1005, 1008 (4th Cir.), *vacated and withdrawn when grand jury indicted target and he became fugitive*, 697 F.2d 112 (4th Cir.1982) (en banc); *In re Grand Jury Proceedings (Jeffrey Fine)*, 641 F.2d 199 (5th Cir.1981); *In re Grand Jury Proceedings (Gary Katz)*, 623 F.2d 122 (2d Cir.1980); *In re November 1979 Grand Jury*, 616 F.2d 1021 (7th Cir.1980); *In re Grand Jury Proceedings (Appeal of FMC Corp.)*, 604 F.2d 798 (3d Cir.1979); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7th Cir.1977), *cert. denied*, 435 U.S. 942 (1978). *But see In re Oberkoetter*, 612 F.2d 15 (1st Cir.), *app. for stay denied*, 444 U.S. 1041 (1980).

2. *See infra* pp. 972–973.

3. The attorney-client privilege is clearly of no help to the appellant here. This circuit recently held that information relating to fees and sources of such fees is not, in most circumstances, protected by the attorney-client privilege from disclosure. *See In re Shargel*, 742 F.2d 61 (2d Cir.1984). No special circumstances exempting appellant from application of this rule are present in the instant case, *cf. United States v. Liebman*, 742 F.2d 807 (3d Cir.1984), and the appellant concedes this.

in the spectrum of the attorney-client relationship and the administration of justice under an adversary system of law: did the district court act unreasonably in failing to require of the Government, before enforcing a subpoena served upon counsel to testify before a grand jury ·investigating his client, a' preliminary showing of the relevance of and need for the attorney's testimony and records?

A cornerstone of our adversary system of criminal justice is the right of an accused to have counsel represent him. The Colonists considered the right to the assistance of counsel in criminal cases to be fundamental even before the adoption of the federal Constitution and the Bill of Rights. *See Powell v. Alabama*, 287 U.S. 45, 61–64, 53 S.Ct. 55, 61–63, 77 L.Ed. 158 (1932). The sixth amendment, which incorporated this view of the role of counsel by providing that in all prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense, gave the principle constitutional dimensions. "[T]he right ... is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the basis of all our civil and political institutions.'" *Id.* at 67, 53 S.Ct. at 63 (quoting *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926)).

■ The Supreme Court in more recent years has observed that the plain wording of the sixth amendment guarantee encompasses counsel's assistance whenever necessary to assure a meaningful defense. *United States v. Wade*, 388 U.S. 218, 225, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). It therefore follows that in assuring a

meaningful defense, and in the preparatory stages long before trial,[4] an accused has the fundamental right to be represented by counsel "of his own choice." *Powell v. Alabama*, 287 U.S. at 53, 53 S.Ct. at 58; *see also United States v. Curcio*, 694 F.2d 14, 22–23 (2d Cir.1982); *United States v. Flanagan*, 679 F.2d 1072, 1075 (3d Cir. 1982), *rev'd on other grounds*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

■ Of course, this right is not absolute. For example, it has been pointed out that the "protection [provided by the right] goes no further than preventing arbitrary dismissal of the chosen attorney." *Id.* at 1075.[5] Moreover, it is clear that the sixth amendment right to counsel does not attach at the grand jury stage. *See Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Vasquez*, 675 F.2d 16 (2d Cir.1982) (per curiam). In the instant case, however, we are not concerned with sixth amendment rights as they apply, or do not apply, during the grand jury investigation. Rather, the facts of this case are more accurately seen as impinging on Client's right to have counsel of his choosing in the event an indictment is returned against him—a point at which the sixth amendment unquestionably becomes applicable. That is, this is not a case where a grand jury witness seeks to have the assistance of counsel, or have counsel appointed for him, while appearing before the grand jury. Instead, Client is seeking to preserve his right to have counsel of his own choosing in the event he is indicted. If the right is not protected now, once the right does attach it will already have been

4. Justice Brennan cogently observed in *United States v. Wade*, 388 U.S. at 226–27, 87 S.Ct. at 1931–32, that the right to the assistance of counsel is not only important at trial but it may be equally as important in the preliminary proceedings. "It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.... The pres-

ence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." (Footnotes omitted.)

5. Furthermore, the right must give way when there is an actual serious conflict of interest on the part of an attorney representing two co-defendants. *United States v. Dolan*, 570 F.2d 1177 (3d Cir.1978); Fed.R.Crim.P. 44(c).

rendered meaningless. This circuit has stated that "the right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved." *United States v. Mohabir*, 624 F.2d 1140, 1149 (2d Cir.1980). Even though a trial has not yet begun, where the attorney's client is the target of a grand jury investigation, a sense of fairness and realism requires that a reasonable effort be made in the interim not to disrupt an ongoing attorney-client relationship.

It is against this background that the Government has chosen to issue a subpoena to a criminal defense lawyer who has represented his client for almost two decades. The issuance of such subpoena is troubling for the Model Code of Professional Responsibility states that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Model Code of Professional Responsibility DR 5-102(B) (1979). Thus, by calling an attorney as a witness against his client, the Government is surely setting the stage for the attorney's ultimate disqualification. The Fourth Circuit has recognized this in a case involving similar circumstances:

> When a subpoena is issued against an attorney in an ongoing attorney-client relationship, the attorney may well be

placed in the position of becoming a witness against his client or risking contempt. In either case, there is a strong possibility that a wedge will be driven between the attorney and the client and the relationship will be destroyed.

*In re Special Grand Jury No. 81–1 (Leon Harvey)*, 676 F.2d 1005, 1009 (4th Cir.), *vacated and withdrawn when grand jury indicted target and he became fugitive*, 697 F.2d 112 (4th Cir.1982) (en banc) (footnote omitted).[6]

The Government concedes that enforcement of the subpoena may well lead to the attorney being disqualified from further representing targets affected by his testimony. Nevertheless, it is argued that the public interest in the discovery and prosecution of crime necessarily takes precedence over the right to have counsel of one's choosing, thereby eliminating the need for any preliminary showing of need and relevance before enforcing the subpoena. Of course, the public interest does take precedence in the prosecution, and Client does not deny it. Client, however, claims that before such precedence is exercised, the Government should at least show the relevance of and the need for his attorney's testimony. We agree.

■ As a general rule, it is true that no preliminary showing of need or relevancy is required before a person may be subpoenaed to appear. *See In re Liberatore*, 574 F.2d 78, 82–83 (2d Cir.1978). This rule, however, is not absolute where constitutional rights are implicated. *See id.*[7] In

---

**6.** Similarly, in *Government of the Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir.1984), the court reversed a conviction where counsel for the defendant stipulated to a fact harmful to the defendant's case and yet remained as counsel. In concluding that this action denied the client the right to effective assistance of counsel, the court stated: " The framers of the [sixth] amendment did not propose it to assure an individual counsel a right to testify against his own client and still participate in the case." *Id.* at 138.

**7.** As suggested by the Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), however, even where constitutional rights are implicated, a preliminary showing of need may be inappropriate. Never-

theless, it is possible that "the *Branzburg* ruling may be limited by the special nature of the First Amendment interest advanced there." Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* 741 (5th ed. 1980).

The *Branzburg* Court looked at the chilling of first amendment rights and determined that requiring a preliminary showing of compelling need would be of little use since it would not be clear when a judge would or would not find a "compelling need" for the information. *See Branzburg*, 408 U.S. at 702–03, 92 S.Ct. at 2667–68. A case-by-case analysis, in other words, would still chill first amendment rights because the uncertainty involved would deter informants from speaking to the press. Thus, an

the instant case, the party being subpoenaed is the *attorney* for a target of the investigation and thus, as we have indicated earlier, constitutional rights are at stake. We must, therefore, carefully balance the implicated constitutional rights of the target of the grand jury investigation to have counsel of his own choosing in the event he is indicted and the significant public interest in the discovery and effective prosecution of crime.

In determining the proper standard to be applied in this extraordinary situation involving a subpoena issued to an attorney to testify before the very grand jury investigating his client, there is little guiding case law. The only case that is really on point is *In re Special Grand Jury No. 81-1 (Leon Harvey), supra.* In *Harvey,* the attorneys for a grand jury target were subpoenaed to appear before the grand jury with the records of all money and property received from and disbursed on behalf of their client. The attorneys had represented the target throughout the grand jury proceedings and in prior criminal prosecutions which were also the subject of the grand jury's investigation. In support of a motion to quash the subpoena, the target argued that the documents sought were protected by the attorney-client and work-product privileges, as well as the sixth amendment. In response to this motion, the Government showed only that the investigation related to possible tax violations and that the subpoenaed documents would be useful in proving the contemplated charges. Nevertheless, the district court ultimately denied the motion to quash and the target appealed.

In reversing the district court, the court of appeals first noted, as we have here, that the "subpoena implicate[d] [the target's] constitutional right to counsel of his

choice." 676 F.2d at 1009. It then stated that:

> In balancing the public interest in effective investigation of criminal activity by grand juries against the substantial private interests of preserving a proper ongoing attorney-client relationship and protecting confidential communications, it is not an unreasonable burden to require the government to make a preliminary showing by affidavit.

*Id.* at 1010. The court then went on to determine what must be present in the preliminary showing, concluding that "in this situation, the United States Attorney must include in his preliminary showing a demonstration that the information sought is relevant to *and needed* for an investigation being conducted by the grand jury." *Id.* at 1011 (emphasis in original). Focusing on the "need" component, the court stated that the Government must "show by affidavit an *important* need for the information sought," *id.* (emphasis added), and further noted that "there are two inquiries the prosecution must address when making a showing of need. First, is the information sought necessary or important to the grand jury investigation? Second, is the subpoenaed attorney the best source for the information?" *Id.* at 1011 n. 6.

The Government contends that this court has declined to follow the rationale in *Harvey.* In support of this contention, it cites numerous cases. *See, e.g., In re Liberatore,* 574 F.2d 78, 82–83 (2d Cir.1978); *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *United States v. Doe (Schwartz),* 457 F.2d 895, 898 (2d Cir.1972), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608, (1973); *Colton v. United States,* 306 F.2d 633, 636–37 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *In re Heuwetter,* 584

absolute privilege would be necessary to provide any real protection, and such an absolute privilege was, according to the Court, not appropriate in light of the importance of presenting all relevant information to the grand jury.

In the instant case, there is no similar problem, for an absolute privilege is not necessary. A case-by-case analysis (as would be necessitat-

ed by a less than absolute privilege) would not deter individuals from having lawyers of their own choice. Rather, it would encourage this by providing additional protection for the attorney-client relationship. Thus, unlike *Branzburg,* requiring a showing of need would not be a meaningless or unnecessary gesture.

F.Supp. 119, 125 n. 5 (S.D.N.Y.1984). A review of these cases, however, reveals that all but one are readily distinguishable from the case we have under consideration here.

For example, *Liberatore, Horowitz,* and *Schwartz* did not involve subpoenaes served on lawyers, and *Colton* concerned the intricacies of the attorney-client privilege, not the right to have counsel of one's choosing. The lone exception is *Heuwetter,* a case in which the district court dealt directly with *Harvey* and concluded that no such showing of need and relevancy is required in this circuit, nor should it be. 584 F.Supp. at 125, n. 5. In coming to this conclusion, however, the court relied on three cases—*Horowitz, Colton,* and *In re Grand Jury Proceeding,* 721 F.2d 1221, 1223 (9th Cir.1983)—that are completely inapposite. *Horowitz* dealt with a subpoena issued to a non-lawyer, *Colton* was decided on the ground that the attorney-client privilege did not apply, and in *In re Grand Jury Proceeding,* the attorney-client relationship no longer existed at the time of the grand jury investigation. Furthermore, *Heuwetter* relied in part on the argument that the sixth amendment right to counsel is not applicable at the grand jury stage. *See* 584 F.Supp. at 125 n. 5. As noted earlier, *see supra* pp. 972–973, this is not determinative in the type of case under consideration.

We find the rationale of the court of appeals in *Harvey* persuasive,[8] and, as discussed immediately above, there is no dispositive authority to the contrary in this circuit. Thus, we hold that when a subpoena is issued to an attorney to testify before a grand jury investigating his client whom he has theretofore represented, and where the attorney will be disqualified if he testifies, the Government should make a preliminary showing of relevance and reasonable need.[9] *Compare In Re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984) (affirming quashing of subpoena in similar case; only significant factual difference is that subpoenaed attorneys were serving as defense counsel in related, pending state criminal proceedings). In reaching this conclusion, we are necessarily faced with the task of balancing two competing interests—the desire to present in the public interest all relevant information to the grand jury and the interest, under our adversary system of criminal law, in maintaining the integrity of the attorney-client relationship.

In carefully weighing these important interests, two points support additional protection for the attorney-client relationship. First, the unbridled use of the subpoena would potentially allow the Government, in this and future cases, to decide unilaterally that an attorney will not represent his client. Such a power of disqualification can undermine and debilitate our legal system by subjecting the criminal defense bar to the subservience of a governmental agent. The unrestricted exercise of this power without adequate justification does not strike us as necessary or indispensable in an adversary system of criminal justice, particularly when we consider the significance of the attorney-client relationship and the need for an independent bar. Second, as noted earlier, the right to have counsel of one's choosing in the defense of a criminal charge is of constitutional dimensions. Thus, any potential infringement of this right must only be as a last resort. It should be noted, however, that the "protection [provided by the right] goes no further than preventing arbitrary dis-

---

8. We realize that *Harvey* has been withdrawn and, therefore has no precedential value. *See United States v. Morchower,* 718 F.2d 1093, slip op. p. 3 (unpublished opinion) (4th Cir.1983). As noted above, however, we find the *Harvey* reasoning persuasive and rely on it. As for *Morchower,* that case involved only the production of documents and not the testimony of the attorney, and the attorney's disqualification was not an issue. Thus, it is distinguishable on several grounds.

9. The instant case involves a situation where both parties *concede* that the attorney will ultimately be disqualified if he testifies. Thus, we are not presented with a case in which disqualification is "speculative" and consequently express no opinion as to the standard to be applied in such a case. In light of this, the dissent's statements regarding the speculative nature of the burden of requiring an attorney to testify, *see* dissenting op. at 984–985 are inapposite.

missal of the chosen attorney." *United States v. Flanagan,* 679 F.2d 1072, 1075 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). Still, a requirement that the Government make a preliminary showing of need and relevance is consistent with this analysis and is not unduly burdensome. Requiring adequate justification will prevent the arbitrary dismissal of an attorney and still protect the grand jury's access to information if the Government can demonstrate that the attorney's testimony is not only relevant but that there is a need for it that cannot reasonably be met in some other fashion. The right to choose one's counsel is thus afforded sufficient protection without being accorded excessive deference.[10]

### III.

The standard enunciated above requires that the Government bear the burden of proving relevance and need before enforcing a grand jury subpoena to compel an attorney to testify before a grand jury investigating his client. The dissent suggests that, in formulating the standard in this manner, we "have ignored our policy of requiring the party challenging the grand jury subpoena to bear the burden of showing that the information sought is either privileged or irrelevant to any legitimate object of investigation by the grand jury." Dissenting op. at 987. In support of its position, the dissent relies primarily upon *In re Liberatore,* 574 F.2d 78, 82–83 (2d Cir.1978). *Liberatore,* however, was not a case in which constitutional rights were implicated and, thus, is distinguishable from the case at hand. As the *Liberatore* court itself recognized, "the government has no burden whatsoever to make a preliminary showing" where "the compelled production of such evidence *implicates no constitutional rights." Id.* at 82

(emphasis added). This principle is not applicable here for, as we have indicated earlier, constitutional rights are implicated in the instant case.

*Liberatore* is further distinguishable on the ground that, unlike the case at hand, only non-testimonial evidence was sought in that case. Moreover, *Liberatore* relies in significant part on the case of *In re Horowitz,* 482 F.2d 72, 80 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). This is instructive inasmuch as the *Horowitz* court placed on the Government the burden of making a preliminary showing of relevance with respect to certain of the documents sought. *See id.* at 79–80. Thus, even where no constitutional rights are implicated, this circuit has no *per se* rule against placing the burden on the party seeking to enforce the subpoena.

Finally, the approach advocated by the dissent involves enormous practical difficulties in the context of a grand jury investigation. In effect, the dissent would require that the party seeking to quash the subpoena prove that the information sought is irrelevant and unnecessary. It is difficult to see how this can be done when, oftentimes, that party will not know the scope or nature of the grand jury investigation. Furthermore, the secrecy requirements of Fed.R.Crim.P. 6(e) impede any potential attempts at discovery that would be made in an effort to meet the burden of proof that the dissent would impose.

### IV.

In the case at bar, the Government has made a showing of relevance. As yet, however, there has been no showing of need, for the Government has failed to show not only that the information sought is necessary to the grand jury investigation, but that there is no other reasonably available source for that information than the attor-

---

**10.** Actual experience suggests that requiring a preliminary showing will not impede the grand jury process. *See Hearings on H.R. 94 Before the Subcomm. on Immigration, Citizenship, and International Law of the House Committee on the Judiciary,* 95th Cong., 1st Sess. 1589 (1977)

(staff analysis of proposed bill argues that the requirement of a showing of relevancy "has not caused any serious disruption in grand jury proceedings" in the Third Circuit); *see also Harvey,* 676 F.2d at 1012 n. 9; Y. Kamisar, W. LaFave & J. Israel, *supra,* at 738 & n. g.

ney. Until there has been a sufficient showing of such reasonable need, we believe that it is unreasonable and oppressive to enforce the subpoena. Accordingly, the district court's denial of the motion to quash is reversed and the case is remanded for further proceedings consistent with this opinion.

TIMBERS, Circuit Judge, dissenting.

The grand jury investigation out of which this case arises is about as serious as any that are undertaken in the federal courts. A grand jury sitting in the Eastern District of New York is investigating the activities of a criminal enterprise known as the Colombo organized crime "family" and a faction of that family headed by Anthony Colombo known as the "Anthony Colombo crew". The record before us shows that the activities of this crew under investigation by the grand jury include the crimes of murder, racketeering, narcotics trafficking, robbery, gambling, extortion, interstate transportation of stolen property and other federal crimes. The district court, Eugene H. Nickerson, *District Judge*, entered an order denying the motion by appellant Anthony Colombo (Richard Roe) to quash a grand jury subpoena duces tecum served on appellant's attorney, Barry Slotnick, Esq. (John Doe). The majority today vacates that order. I dissent.[1]

Appellant (Richard Roe) asserts that his right to due process and his right to retain counsel of his choice under the Sixth Amendment will be impaired by enforcement of the grand jury subpoena duces tecum served upon his attorney of seventeen years (John Doe) who presently is representing him before the grand jury. Neither the Fifth nor the Sixth Amendment is applicable here. As an unindicted target of the grand jury investigation, appellant has no Sixth Amendment right to counsel at this stage. There is no independent right to counsel under the due process clause of the Fifth Amendment. Where no constitutional rights have attached, the Supreme Court has declined to impose any requirement upon the government prior to its enforcement of a grand jury subpoena. Even accepting the majority's contention that constitutional rights are somehow "implicated" here, a balancing of the interests involved requires that we forego imposing requirements so stringent that they will interfere unacceptably with the grand jury's constitutionally mandated task of investigating alleged crimes, while protecting persons, concerning whom it has heard accusations, from being unfairly prosecuted.

Both parties agree that if Doe gives incriminating evidence against his client to the grand jury, he will be disqualified from representing him in any criminal prosecution that may result from the grand jury's investigation. Appellant concedes that the information sought is not protected by the attorney-client privilege. He urges us, however, to protect his future *potential*

1. This dissenting opinion, in substantially its present form, originally was circulated to the other members of the panel some time ago. During the period that has elapsed since then, the majority opinion has shifted somewhat. For example, the majority has dropped its original reliance on an alleged Fifth Amendment due process right to counsel; and, for the first time, the majority asserts a standard of review based on Fed.R.Crim.P. 17(c) and asserts its reliance upon the supervisory powers of a *court of appeals* over federal grand jury proceedings.

Despite the shifting of position by the majority, I have decided to retain the substance of my original dissenting opinion. Whatever may be said of the new gloss on the majority opinion by virtue of its dropping certain of its original untenable positions, the current version of the majority opinion really has not departed from what I regard as the essential flaw in the majority's position, namely, its insistence that a preliminary showing by the government of relevance and need is *constitutionally required* prior to enforcement of a grand jury subpoena served on counsel for an unindicted target of a grand jury investigation. Having softened its specifications of constitutional amendments by name, the majority opinion now is replete with references to the "implicated constitutional rights" to counsel of a grand jury target. The essence of the majority's original opinion remains unchanged. And so does this dissent, to which the majority specifically refers.

Moreover, I believe that counsel and their clients expect—indeed are entitled—to have the claims which they address to the Court ruled upon by the Court, including their various constitutional claims.

constitutional right to retain counsel of his choice by requiring the government, before it can enforce the grand jury subpoena served on his attorney, to show that the information sought is necessary for the successful conclusion of the government's case, and that Doe is the only available source of the information sought.

The majority adopts a test that requires the government, prior to enforcement of a grand jury subpoena served on counsel for an unindicted target of a grand jury investigation, to show that "there is a need for [the information] that cannot reasonably be met in some other fashion". While this test is not as stringent as the one appellant proposes, it is inappropriate under the circumstances. This case does not compel us to establish new procedural safeguards for the attorney-client relationship—whether on constitutional grounds, as the majority holds, or in the exercise of our federal supervisory power, as the court held in *In re Special Grand Jury No. 81-1 (Leon D. Harvey)*, 676 F.2d 1005 (4 Cir.), *vacated and withdrawn when grand jury indicted target and he became fugitive*, 697 F.2d

2. In view of the massive reliance which the majority in the instant case places on *Harvey* —especially in relying on its supervisory powers over federal grand jury proceedings in this Circuit—we note that *Harvey* no longer has any precedential value even in the Fourth Circuit. Subsequent to *Harvey*, the Fourth Circuit, in an unpublished opinion by Judge Murnaghan, *United States v. Morchower*, No. 83–1816 (4 Cir. Sept. 28, 1983), explained the lack of precedential value of *Harvey*:

> "The precedential value of the *Harvey* case was eliminated, however, when a majority of the circuit judges in regular active service ordered rehearing *en banc*. *See* 28 U.S.C. § 46(c), FRAP 35(a). Under the established practice of the Court, as a consequence, the panel decision was automatically vacated. Furthermore, the fact that Leon D. Harvey had, in the interim, (a) been indicted and (b) become a fugitive from justice led to an order withdrawing the panel opinions. *In re Special Grand Jury 81-1 (Leon D. Harvey)*, 697 F.2d 112 (4th Cir.1982)."

Slip op. at 3. The Court explained further that "... the granting of rehearing *en banc* [in *Harvey*] was a demonstration of the presence of a serious question in the mind of the Court as a whole as to the correctness of the opinion emanating from the panel majority."

Slip op. at 4. The Court concluded,

112 (4 Cir.1982) (en banc) [hereinafter *Harvey* ]. The majority here places heavy reliance on *Harvey*.[2]

Since, for the reasons stated more fully below, I find no sound basis for the majority's decision, I would affirm the order of the district court. From the majority's refusal to do so, I respectfully but emphatically dissent.

## I.

There is no constitutional basis for establishing new requirements for the government to meet in order to enforce the grand jury subpoena involved in this case.

### A.

The Sixth Amendment does not require a preliminary showing for enforcement of a grand jury subpoena of an attorney whose client is an unindicted target of a grand jury investigation. The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel "at-

> "Since the facts of *Harvey* make it 'nearly identical' [to *Morchower* ] ..., causing it to present 'the precise question' [as in *Morchower* ] ..., and since we have concluded that the *Harvey* dissent has the better chance of prevailing, we apply the reasoning advanced in it and
>
> *AFFIRM."*

Slip op. at 4–5. Judge Murnaghan was also the author of the dissent in *Harvey*. There he stated that

> "... the grand jury should be free to subpoena without preliminarily, on a generalized basis, being required to justify the relevance and necessity of its action."

*Id.*, 676 F.2d at 1012 (footnote omitted).

With the elimination of any precedential value of the Fourth Circuit decision in *Harvey,* the position of the majority in the instant case is seriously undermined. There no longer is any authority whatsoever to which the majority can point in support of its reliance upon the supervisory powers of a *court of appeals* over federal grand jury proceedings to justify requiring the government, prior to enforcing a subpoena served upon counsel for an unindicted target of a grand jury investigation, to establish relevance and need. See Part IV of this dissenting opinion, *infra*.

taches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (plurality opinion). In *Kirby*, the Court refused to "import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only *after* the onset of formal prosecutorial proceedings." *Id.* at 690 (emphasis added). The Court explained that

"[t]he initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

*Id.* at 689–90.

We have followed the Supreme Court in holding that "[a] person comes under the protection of the sixth and fourteenth amendment right to counsel from the moment judicial proceedings are initiated against him, 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Carvey v. LeFevre*, 611 F.2d 19, 21 (2 Cir.1979), *cert. denied*, 446 U.S. 921 (1980), *quoting Kirby v. Illinois, supra*, 406 U.S at 689; *see also United States v. Mohabir*, 624 F.2d 1140, 1146–49 (2 Cir.1980).[3] We have further held that, during the grand jury investigation of an unindicted target, the Sixth Amendment right to counsel does not attach. *United States v. Vasquez*, 675 F.2d 16, 17 (2 Cir.1982) (per curiam); *see also United States v. Mandujano*, 425 U.S. 564, 581 (1976) (plurality opinion; dictum); *in re Groban*, 352 U.S. 330, 333 (1957) (dictum). Since adversary judicial proceedings have not been initiated against appellant in the instant case, his Sixth Amendment right to counsel has not attached, and his interest in continuing to be represented by his present counsel is not of constitutional dimensions.

The Supreme Court has made clear that, when a grand jury subpoena does not infringe upon a constitutionally protected interest, there is no reason to require a preliminary showing before allowing the government to enforce the subpoena. *United States v. Dionisio*, 410 U.S. 1, 16 (1973). Since appellant's Sixth Amendment right to counsel has not attached, there is no merit to his contention that the Constitution requires any greater showing to be made in order to enforce this grand jury subpoena than to enforce any other.[4]

---

3. In support of its contention that the right to counsel of one's choice must be given greater protection than it is presently afforded, the majority quotes from *United States v. Mohabir, supra,* 624 F.2d at 1149. See majority op. at 973. I think it is significant that a more complete quotation from Chief Judge Feinberg's opinion makes clear that the majority's concern for the right to retain counsel of one's choice is misplaced since no prosecution has begun in the instant case:

"[*A* ]*fter prosecution has begun,* the right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved...."

*Id.* (Emphasis added, that being the part omitted from the majority's quote from the *Mohabir* opinion).

4. Appellant contends that enforcement of the grand jury subpoena against his attorney will chill his future *potential* Sixth Amendment right to retain counsel of his choice. The argument that one's rights are being chilled usually has been made in the context of First Amendment rights where a statute is found to be so vague or overbroad that it may inhibit the full exercise of First Amendment rights. In such cases, the petitioner claims that he is being deterred from exercising existing rights. The argument appears to be inapposite where the constitutional right allegedly chilled has not yet attached.

Further, the right to retain counsel of one's choice is not an absolute right. *United States v. Ostrer*, 597 F.2d 337, 341 (2 Cir.1979). The disqualification of one's attorney, therefore, is not necessarily an unconstitutional impairment of one's right. See Part III *infra* of this opinion.

Nor will the disclosure to the grand jury of unprivileged information impair appellant's statutory or common law attorney-client privi-

## B.

Nor does the Fifth Amendment require a preliminary showing prior to enforcement of a grand jury subpoena served on counsel for an unindicted target of a grand jury investigation. The Sixth Amendment right to assistance of counsel is "of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' ", *Powell v. Alabama*, 287 U.S. 45, 67 (1932), *quoting Hebert v. Louisiana*, 272 U.S. 312, 316 (1926), and therefore necessarily is included in the concept of due process of law. *Powell v. Alabama, supra; Gideon v. Wainwright*, 372 U.S. 335 (1963). *Powell v. Alabama* and *Gideon v. Wainwright* made the Sixth Amendment right to counsel applicable to the states through the due process clause of the Fourteenth Amendment. The Supreme Court also has held that the Fourteenth Amendment due process clause guarantees a criminal defendant a fair opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense, but that not every denial of a request for a continuance in order to do so is so arbitrary as to violate due process. *Ungar v. Sarafite*, 376 U.S. 575, 589–90 (1964); *Chandler v. Fretag*, 348 U.S. 3, 10 (1954). Inadequate assistance of counsel also may be challenged as a violation of a defendant's Sixth Amendment right to counsel, as made applicable to the states through the due process clause of the Fourteenth Amendment. *Cuyler v. Sullivan*, 446 U.S. 335, 342–45 (1980). While violations of an accused's right to counsel are encompassed within the concept of due process, the due process clauses neither expand nor contract the constitutional protection provided by the Sixth Amendment right to counsel.

The majority, however, holds that the right to be represented by counsel of one's choice "*arises* not only from the sixth amendment but also the due process clause of the *fifth* amendment" (emphasis added).[5] As support for this proposition, it cites *United States v. Flanagan*, 679 F.2d 1072, 1075 (3 Cir.1982), *rev'd on other grounds*, 104 S.Ct. 1051 (1984), and *Davis v. Stamler*, 650 F.2d 477, 479–80 (3 Cir.1981). *Flanagan* contains a statement to the effect that a defendant's decision to select a particular attorney is afforded some *protection* by the Sixth Amendment and by the due process clause of the Fifth Amendment, citing *Davis v. Stamler*. Without any reference to the Fifth Amendment, the court in *Davis v. Stamler* stated that "[t]he right to counsel of one's choice also derives from the due process clause", *id.* at 480, citing *United States ex rel. Carey v. Rundle*, 409 F.2d 1210 (3 Cir.1969), *cert. denied*, 397 U.S. 946 (1970). *Carey* held that the Sixth and Fourteenth Amendments require that an accused be afforded a fair and reasonable opportunity to obtain counsel of his choice. *Id.* at 1211, 1215. Presumably, the court in *Davis v. Stamler* also was referring to the due process clause of the Fourteenth Amendment since that case concerned a state criminal defendant, and the court cited *Carey* as support for its statement. This, however, leaves *United States v. Flanagan* with no support for its proposition that the due process clause of the *Fifth* Amendment protects a defendant's decision to retain particular counsel. It would appear that any protection of the right to counsel afforded by the due process clause of the Fifth Amendment is superfluous in federal criminal proceedings.

What is cause for more serious concern here, however, is the complete lack of support for the majority's contention that the right to be represented by counsel of one's choice "arises" from both the express provision of the Sixth Amendment, and the Fifth Amendment due process clause.

lege. The privilege would survive to protect confidential communications within its scope even if the attorney-client relationship were terminated. Weinstein & Berger, Weinstein's Evidence ¶ 503(c)[01], at 503–67 (1982).

5. As stated above, the revised majority opinion, in vacating the district court's order, has dropped its reliance on an alleged Fifth Amendment due process right to counsel.

While the Supreme Court has stated that the right to counsel is encompassed by the concept of due process, and that certain limitations on the right to counsel violate due process, it has not indicated that a separate Fifth Amendment due process clause right to counsel exists independent of the Sixth Amendment right to counsel, and at times when the Sixth Amendment right has not even attached. Yet this is what the majority would have us believe.

The majority cites no authority to support its contention that, if the Sixth Amendment right to counsel has not attached, then there still exists a Fifth Amendment due process clause right to counsel of one's choice. The reference to *Kirby v. Illinois, supra,* 406 U.S. 682, fails to bolster its position. In *Kirby,* the Supreme Court, after holding that there was no Sixth Amendment right to counsel where no judicial criminal proceedings had been initiated, and no Fifth Amendment (*Miranda*) right to counsel where no compulsory self-incrimination was involved, stated that it would leave open the possibility that the "lineup [could have been so] unnecessarily suggestive and conducive to the irreparable mistaken identification" as to violate due process. *Id.* at 691. There is nothing in *Kirby* to suggest that, although no right to counsel had attached under the Sixth Amendment, or the Fifth Amendment privilege against incrimination, there still might be a right to counsel under the Fifth Amendment due process clause.

Nor will *Harvey, supra,* 676 F.2d 1005, support such a proposition. *Harvey,* like the instant case, involved a subpoena served on counsel for an unindicted grant jury target. The court in *Harvey* found that "[t]he interests in maintaining a proper attorney-client relationship and protecting the confidences of that relationship are similar to the sixth amendment right to effective assistance of counsel and fundamental to our adversarial system of justice." *Id.* at 1010. It stated, however, that

"[w]e do not hold that the sixth amendment requires a preliminary showing in this case. We do hold, however, that in exercise of our supervisory power over federal grand jury proceedings in this circuit, the preliminary showing described is appropriate to protect a person's interest in maintaining a proper attorney-client relationship."

*Id.* at 1012. Thus, the Fourth Circuit chose to rely on its supervisory power to reach a result not constitutionally required in this situation. Unlike the Fourth Circuit, the majority today holds that a preliminary showing is constitutionally mandated. With no basis for doing so, it attempts to create a new constitutional right to counsel under the general language of the due process clause of the Fifth Amendment, a right clearly exceeding the time frame defined in *Kirby v. Illinois, supra,* for the specific provision of the Sixth Amendment that throughout our history has been the source of the right to counsel.[6] Such judicial innovation is incompatible with long settled law and should not be countenanced. The harm caused by such judicial innovation is further compounded in this case since there is no justification for the burdens the majority seeks to impose upon the grand jury process.

## II.

There is no statutory or common law privilege protecting the information the grand jury seeks to have disclosed in this case. The subpoena requires Doe to appear before the grand jury and produce records of any monies or property transferred to him, or to any of his associates on his behalf, by, or for, twenty-one named individuals. The government states that it seeks the information regarding fees and client identity as evidence of (1) money or other property which may have been derived from criminal activity, and (2) a criminal enterprise and appellant's position as

---

**6.** A second right to counsel exists as part of the Fifth Amendment privilege against self-incrimination. This right to counsel exists specifically to protect the Fifth Amendment privilege of individuals held for interrogation, *Miranda v. Arizona,* 384 U.S. 436, 469–73 (1966), and is separate from the Sixth Amendment right to counsel. *Kirby v. Illinois, supra,* 406 U.S. at 689.

head of that enterprise. The government claims that evidence that appellant, as "benefactor", paid for or otherwise arranged for legal representation for members of this criminal enterprise who were apprehended during the course of illegal activity is needed to determine whether appellant should be indicted for his activities as head of a criminal enterprise.

We consistently have held that, absent special circumstances, client identity and fee information are not privileged. *E.g.*, *In re Shargel*, 742 F.2d 61, 62 (2 Cir.1984); *Colton v. United States*, 306 F.2d 633, 637–38 (2 Cir.1962), *cert. denied*, 371 U.S. 951 (1963); *United States v. Pape*, 144 F.2d 778, 782 (2 Cir.), *cert. denied*, 323 U.S. 752 (1944). "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative...." Supreme Court Standard 503—Lawyer-Client Privilege. To be privileged, the communication must be confidential, and it must be necessary to obtain informed legal advice for the client. *Fisher v. United States*, 425 U.S. 391, 403 (1976). While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the communication necessary for an attorney to act effectively, justly, and expeditiously. For this reason, absent special circumstances not present here, disclosure of fee information and client identity is not privileged even though it might incriminate the client. *In re Shargel*, *supra*, 742 F.2d at 63. Fee information may be sought as evidence of unexplained wealth which may have been derived from criminal activity, and information that fees were paid either by other clients or by third persons may be sought to determine the identity of a benefactor. *Id.* at 63–64. As a general rule, and specifically in this case, such information is not protected from disclosure by the attorney-client privilege.

### III.

There is no policy basis for adopting the majority's requirement that the government make a preliminary showing of relevancy and need in order to enforce a grand jury subpoena served on an attorney whose client is an unindicted target of a grand jury investigation.

### A.

The Fifth Amendment guarantees in part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. amend. V. "The grand jury is an integral part of our constitutional heritage which was brought to this country with the common law." *United States v. Mandujano*, *supra*, 425 U.S. at 571. Historically, it has been viewed as "a basic guarantee of individual liberty", and it "continues to function as a barrier to reckless or unfounded charges." *Id.* Grand jury proceedings serve not only an investigative function of determining whether an indictment should be returned, but also the protective function of securing persons "against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." *Id.*

The investigative powers of the grand jury are broad so that it may carry out adequately its task of determining the existence of criminal activity and returning well-founded indictments. *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972). The grand jury is authorized to subpoena witnesses and to require the production of evidence.

"Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings."

*Id.* at 688 (citations omitted). Every person within the jurisdiction of the government has an obligation to appear and give his evidence before the grand jury. *United States v. Dionisio, supra,* 410 U.S. at 9–10.

"A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed...." *United States v. Stone,* 429 F.2d 138, 140 (2 Cir.1970). It is part of the grand jury's function of protecting persons against arbitrary or unfair action to call before it persons suspected of criminal activity, and "persons suspected of no misconduct but who may be able to provide links in a chain of evidence relating to criminal conduct of others". *United States v. Mandujano, supra,* 425 U.S. at 573. "It is entirely appropriate—indeed imperative—to summon individuals who may be able to illuminate the shadowy precincts of corruption and crime." *Id.*

### B.

The majority's creation of a new requirement to be complied with by the government before it may enforce a grand jury subpoena can be justified only if the information sought is protected by a constitutional, common law, or statutory privilege.[7] *See Branzburg v. Hayes, supra,* 408 U.S. at 688.

"Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it."

*United States v. Dionisio, supra,* 410 U.S. at 17–18 (citations omitted). Where, as here, appellant raises no valid constitutional claim, nor statutory privilege, "there is no more reason to require a preliminary showing ... than there would be in the case of any witness who, despite the lack of any constitutional or statutory privilege, declined to answer a question or comply with a grand jury request." *Id.* at 16. Such interference with grand jury proceedings is not justified by the Constitution or case law. Further, the Supreme Court has noted with disapproval the delays caused by requiring the government to make a preliminary showing of need, and unavailability of other sources, before it can enforce a grand jury subpoena. *Id.* at 17 n. 16.

Even where constitutional rights are involved, the Supreme Court has been reluctant to create constitutional exemptions to the duty to appear before the grand jury and furnish relevant information, or to require preliminary showings to be made before persons claiming an infringement of their constitutional rights can be compelled to testify. *See, e.g., Branzburg v. Hayes, supra,* 408 U.S. at 690, 708.

In *Branzburg,* the Supreme Court recognized that news gathering qualified for First Amendment protection, but it held that reporters were nevertheless obligated to appear before the grand jury as other citizens do and answer questions regarding a criminal investigation, including informa-

---

7. A district court may, of course, upon motion of a subpoenaed party, decide to quash or modify a particular subpoena where compliance would be unreasonable or oppressive. Fed.R. Crim.P. 17(c). We review such decisions only to determine whether the court acted so arbitrarily as to exceed its discretion. The majority holds that the district court abused its discretion by determining not to quash a subpoena served on an attorney for an unindicted grand jury target since *the majority believes that constitutional rights are implicated.* Thus, it seeks to create new constitutional requirements under the guise of reviewing the district court's exercise of its discretion in supervising grand jury proceedings. This strikes me as utterly untenable. It flies squarely in the face of long settled law of the Supreme Court and of this Court.

tion received in confidence. *Id.* at 681–82, 708–09. The Court stated that

> "[f]air and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process. On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.
>
> This conclusion itself involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire, nor does it threaten the vast bulk of confidential relationships between reporters and their sources. Grand juries address themselves to the issues of whether crimes have been committed and who committed them. Only where news sources themselves are implicated in crime or possess information relevant to the grand jury's task need they or the reporter be concerned about grand jury subpoenas."

*Id.* at 690–91.

The same reasoning would be equally applicable here if appellant's Sixth Amendment right to retain counsel of his choice had attached. A balancing of the asserted interests demonstrates that the obligation of appellant's attorney to appear before the grand jury and testify outweighs appellant's asserted constitutional right. The right to retain counsel of one's choice is not absolute, and "must give way when required by the fair and proper administration of justice." *United States v. Ostrer,* 597 F.2d 337, 341 (2 Cir.1979). The burden imposed on Sixth Amendment rights by the potential disqualification of counsel for grand jury targets is speculative.[8] It is only in those cases where an attorney possesses information relevant to the grand jury's task that a subpoena would potentially interfere with a client's right to retain that particular attorney at a subsequent ensuing trial. As we stated in *In re Shargel, supra,* 742 F.2d at 64, creating even a statutory testimonial privilege for fee information and client identity "would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money." Since an attorney may not accept compensation for his legal services from someone other than his client without full disclosure of the implications of the relationship, a scenario in which the payor is the benefactor of the members of a criminal enterprise, the payor later is indicted for his activities, and the attorney is called upon to be a witness at trial, thus causing his disqualification as trial counsel, is something that can be disclosed at the time the attorney discusses accepting payment. *See* Model Code of Professional Responsibility, DR 5–107, EC 5–21, 5–22.[9] In light of the

---

**8.** The burden on the Sixth Amendment right to retain counsel of one's choice is even more speculative where the target of a grand jury investigation is unindicted, since the right attaches only if and when he is indicted. Once the right attaches, a pre-trial hearing on whether an attorney's testimony will be required at trial protects the accused's right to retain counsel of his choice against arbitrary interference. This, as the majority recognizes, is the extent of the constitutional protection afforded the right to retain counsel of one's choice.

**9.** It is noteworthy that appellant probably would not be complaining on the impairment of his potential Sixth Amendment right to retain coun-

sel of his choice if his attorney had heeded the warning of the Model Code of Professional Responsibility against accepting payment of clients' fees from a third party. DR 5–107(A), EC 5–21, 5–22. Accepting payment of clients' fees from a third party may subject an attorney to undesirable outside influence, particularly where the attorney is representing clients in criminal matters and the third party is the head of a criminal enterprise of which the clients are members. In such a situation, an ethical question arises whether the attorney's loyalties are with the client or the payor. *See* Judd, *Conflicts of Interest—A Trial Judge's Notes,* 44 Fordham L.Rev. 1097, 1099–1101, 1105 n. 41 (1976).

undesirable effects a testimonial privilege would have on the criminal defense bar, and the speculative nature of the burden of requiring an attorney to testify, on the Sixth Amendment right to retain counsel of one's choice—a right which is by no means absolute—it is not plausible to argue that the asserted constitutional right outweighs the importance of the effective operation of the grand jury as an instrument for justice and effective law enforcement.

While involuntary disqualification of an attorney interferes with an accused's constitutional right to retain counsel of his choice, courts have the power and duty to disqualify counsel where the public interest in maintaining the integrity of the judicial system outweighs the accused's constitutional right. Criminal defendants have been constitutionally required to retain other counsel when "the need to preserve the highest ethical standards of professional responsibility" outweighs the accused's constitutional right, *United States v. Cunningham*, 672 F.2d 1064, 1070 (2 Cir.1982), *cert. denied*, 104 S.Ct. 2154 (1984), and "where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial". *United States v. Cicale*, 691 F.2d 95, 106 (2 Cir.1982), *cert. denied*, 460 U.S. 1082 (1983), *quoting United States v. Bentvena*, 319 F.2d 916, 936 (2 Cir.1963).

In *United States v. Cunningham, supra*, 672 F.2d 1064, the government moved to have the defendants' attorneys disqualified as trial counsel. The district court applied a balancing test to determine whether the accuseds' constitutional right to be represented by their retained counsel was outweighed by the interests of the government and the public in preserving the ethical standards of the legal profession. Our Court, in *Cunningham*, did not inquire whether the government should be prevented from calling the attorney of one of the defendants as a witness in order to avoid the ethical conflict of interest necessitating the disqualification. Rather, we instructed the district court to determine whether the attorney's testimony was admissible as unprivileged, nonhearsay, and if so, whether the accused's constitutional right to retain counsel of his choice should override the public's interest in enforcing Disciplinary Rule 5–102(A) which requires an attorney-witness to withdraw as trial counsel for his client. As *Cunningham*, and numerous other cases in this Circuit, make clear, the right to retain counsel of one's choice is not absolute; it may be constitutionally impaired where the interests of the judicial system override the interests of the accused.

### C.

Appellant's counsel has complained bitterly about the government's refusal to accept Doe's offer of an informal proffer of the information sought in lieu of an appearance before the grand jury. Based on the statements made by appellant's counsel in affidavits, at the hearing on the motion to quash, and at oral argument before us, however, it appears to be appellant's contention that even an informal proffer would violate his asserted constitutional rights.

On October 22, 1984, at the hearing on Doe's motion to quash the subpoena, the district court questioned whether Doe's furnishing the information in any form, by affidavit or testimony before the grand jury, would not lead to his disqualification in any event. Doe's attorney (who also represented appellant at the hearing) agreed that the form would make no difference on the issue of disqualification, but

The head of a criminal enterprise can avoid the potential threat of disqualification of his attorney by providing the members of his enterprise with funds so that they may retain counsel directly. Of course, such an arrangement does not give the head of an enterprise the same control he would have as a "benefactor". Often the presence of counsel retained by a benefactor acts to restrain the members of the criminal enterprise from trading information regarding the enterprise for leniency. The restraint can come either directly—as where the attorney pleads guilty for the defendant without allowing him to consider cooperating with the government—or indirectly—as where the presence of the attorney simply serves as a reminder to the defendant that his benefactor will not be pleased if he becomes a government witness.

explained that, before any information was provided in any manner, it was his clients' desire to have the government required to demonstrate why it needed the information, why Doe needed to be the source, and why the government's present sources were inadequate to provide the information sought. When the court again suggested that disqualification was inevitable no matter from what source the government obtained the information, counsel indicated only that disqualification was not as certain as it would be if Doe were a grand jury witness.

Counsel repeated these same arguments on appeal and in his October 24, 1984 affidavit accompanying appellant's motion for an expedited appeal. In that affidavit, counsel for appellant and Doe stated that

"[i]t was JOHN DOE'S overriding contention that since any appearance on his part in the grand jury, as well as even a suggested informal proffer of specific information short of a grand jury appearance, would result in his ultimate disqualification, it would create a chilling effect on his clients' Due Process and Sixth Amendment rights by effectively destroying long-term and highly valued attorney-client relationships. It was urged, therefore, that the Government should be required to make a showing of an outweighing compelling need before such a subpoena could be enforced."

It is appellant's contention, therefore, that the problem exists no matter in what form his attorney is compelled to provide the evidence, and that the government must show a compelling need before it can require his attorney to provide any unprivileged information regarding their relationship.

### D.

In response to appellant's contentions, the majority in today's decision has required the government to make a showing of "reasonable need" before it can enforce the subpoena against appellant's attorney. Additional protection of Sixth Amendment rights, however, is not necessary. If addi-

tional protection of the attorney-client relationship from potential disqualification by grand jury subpoena is provided, then, at the very least, the protection should be tailored to the interest asserted, and the burden should be placed where it traditionally, and rationally, has been placed: on the party seeking to quash the subpoena.

Adequate protection of Sixth Amendment rights would be afforded by our decision to allow grand jury subpoenas to be quashed if they are shown to bear no conceivable relevance to any legitimate object of investigation by the grand jury. *See In re Liberatore*, 574 F.2d 78, 82–83 (2 Cir. 1978). If the information sought is relevant, then the grand jury should not be denied its traditional access to such information—calling before it those witnesses, who are believed to have relevant information, to give their testimony. If a grand jury target is subsequently indicted and prosecuted, and his attorney has given relevant information to the grand jury, raising the possibility that he may be called as a witness at trial, then the trial court may balance the defendant's Sixth Amendment right to retain that attorney as trial counsel against the public's interest in enforcing the ethical standards of the legal profession. *See United States v. Cunningham, supra,* 672 F.2d 1064. Concerns about prosecutorial abuse of grand jury subpoenas ignore the fact that subpoenas are subject to being quashed, *In re Liberatore, supra,* and grand juries are subject to judicial control. Courts will not allow grand juries to conduct bad faith investigations, or issue subpoenas solely for the purpose of disrupting a target's relationship with his attorney. *Cf. Branzburg v. Hayes, supra,* 408 U.S. at 707–08.

The majority holds that the relationship between client and attorney deserves greater protection than it has received in the past. While such protection is not constitutionally required, some appellate courts have granted it pursuant to their supervisory power. *See, e.g., Harvey, supra,* 676

F.2d at 1012.[10] Whatever the asserted basis for requiring a preliminary showing, it is inconceivable to me that the majority should have ignored our policy of requiring the party challenging the grand jury subpoena to bear the burden of showing that the information sought is either privileged or irrelevant to any legitimate object of investigation by the grand jury. By requiring the government to bear the burden of proving relevance and need before it can enforce a grand jury subpoena served on counsel for the grand jury target, the majority adopts the same kind of preliminary showing of which the Supreme Court has disapproved as causing undesirable delays in grand jury investigations.[11] *See United States v. Dionisio, supra,* 410 U.S. at 16–18 & n. 16 (no constitutional rights involved); *Branzburg v. Hayes, supra,* 408 U.S. at 701–08 (constitutional rights involved). Further, in fashioning its protective requirements, the majority has failed to set forth a test that protects the interest sought to be protected.

The majority's requirement that the government demonstrate a need for the information sought, and the reasonable unavailability of other sources for the information, will not adequately protect appellant's interest. If the information is relevant, and the government obtains it and determines to use it at trial, disqualification

will be an issue no matter from what source the information originally was obtained. The majority's concern, therefore, should not have been limited to whether the attorney is the source of the information, but should have addressed whether the grand jury should be allowed to consider the information from any source. Such deference to the attorney-client relationship clearly would be inappropriate as it fails to reflect the interest of the public in the efficient functioning of the grand jury. A more appropriate test for all concerned would be to require the party seeking to quash a subpoena, like the one at issue here, to show that the information sought is either irrelevant to any legitimate object of investigation by the grand jury, or that the information may be obtained from another source that would avoid the risk of disqualification of appellant's attorney. This was the line of reasoning followed by the district court in the instant case at the hearing on the motion to quash. I would hold that, if any additional protection of the attorney-client relationship is required, this test would balance the interest of both parties fairly and adequately.

Further than this we should not go. The right to retain counsel of one's choice is not absolute and must yield to the public's interest in the effective operation of the grand jury. Where, as here, Sixth Amend-

---

**10.** We have held that our supervisory power over the district courts authorizes us to impose sanctions on grand jury prosecutors to encourage uniformity of practice within a district. *United States v. Jacobs,* 547 F.2d 772 (2 Cir. 1976), *cert. dismissed,* 436 U.S. 31 (1978). The authority of *appellate* courts to establish procedural rules, for *district* courts, regulating the enforcement of grand jury subpoenas, however, has been severely questioned. Beale, *Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts,* 84 Columbia L.Rev. 1433, 1458–62, 1491–94 (1984).

**11.** The majority states that "[a]ctual experience suggests that requiring a preliminary showing will not impede the grand jury process." See majority op. at 976 n. 10. The majority refers to a study of the Third Circuit's requirement of a showing by affidavit that the items sought by a grand jury are relevant to its investigation, properly within its jurisdiction, and not sought primarily for another purpose. *See In re Grand*

*Jury Proceedings (Schofield),* 507 F.2d 963, 966 (3 Cir.), *cert. denied,* 421 U.S. 1015 (1975). The Third Circuit, however, does not require a showing that the information sought cannot be obtained from other sources, a showing the Supreme Court has disapproved of as impeding grand jury investigations and frustrating "the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio, supra,* 410 U.S. at 17 & n.16.

Whatever may be said of the majority's valiant effort to rationalize turning on its head the normal burden of requiring the party challenging a grand jury subpoena to bear the burden of proving its claim (see Part III of majority op. at 976—a Part newly introduced in the current version of the majority opinion), the fact comes through loud and clear that this concept finds no support whatsoever in the law of the United States Supreme Court or of the Second Circuit.

ment rights have not yet attached, and may never attach, any imposition of additional tests and requirements for the government to meet prior to enforcement of the grand jury subpoena will only interfere unacceptably in the grand jury's task of determining whether an indictment should be returned or whether the charges were recklessly and unjustifiably brought.

## IV.

Rule 17(c) of the Federal Rules of Criminal Procedure gives the *district court* the power to quash or modify a grand jury subpoena if compliance would be unreasonable or oppressive. The scope of our review of a district court's decision is limited to a determination of whether it acted so arbitrarily as to constitute an abuse of its discretion under the circumstances. The majority has failed to demonstrate that, where the government admittedly has made a showing of relevance, it is an abuse of discretion for a district court to deny a motion to quash a subpoena served upon the attorney for an unindicted target of a grand jury investigation without first requiring the government to show that the information sought from the attorney was necessary to the investigation and that no other reasonably available source exists for that information.[12] The majority's concern purportedly is for the target's future potential right to retain counsel of his choice. This right is held to be "implicated" since the target's attorney will be disqualified as trial counsel *if* the client is indicted, *if* the government decides to prosecute, and *if* the attorney is called as a witness against his client at trial. This right, however, even once it has attached, is guaranteed no more protection than prevention of the *arbitrary* dismissal of an accused's chosen attorney. An important district court within the Second Circuit, in a well considered opinion, *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels)*, 605 F.Supp. 839 (S.D.N.Y.1985), *rev'd on other grounds*, No. 85–6066 (2 Cir. June 27, 1985), recently rejected the untenable contention that the threat of disqualification of an attorney compelled it either to quash a similar grand jury subpoena or to require that the government make a preliminary showing prior to enforcement of the subpoena. See especially, *id.* at 851 n. 16, the reference to "*In Re Grand Jury Subpoena Served Upon John Doe*, No. 84–6319 (2d Cir. appeal filed Oct. 25, 1984)." That is the instant case. Former Chief Judge Edelstein's opinion in *Simels* is a striking illustration of the mischief that will result in this Circuit until today's majority opinion in the instant case is promptly and emphatically corrected.

The majority today seeks to create an unprecedented level of protection for unprivileged information in the hands of an attorney. Once client identity and fee information have been shown to be relevant to a grand jury investigation, as admittedly have been shown here, additional safeguarding of that information protects from disclosure the very fee structures we should seek to discourage—those that involve an attorney, whether wittingly or

---

12. The majority relies on the First Circuit Court of Appeals' refusal to hold that a district court abused its discretion in granting a motion to quash subpoenas served upon attorneys for unindicted targets of a federal grand jury investigation. The court stated that it was "unwilling to say that the district court exceeded its discretion in finding the *timing* of the subpoenas to be inappropriate, given the pendency of the state criminal proceedings in which the subpoenaed attorneys were serving as defense counsel." *In re Grand Jury Matters*, 751 F.2d 13, 19 (1 Cir. 1984) (emphasis in original). The majority concedes that the fact that the subpoenaed attorneys in the First Circuit case were serving as defense counsel in related, pending state criminal proceedings is a "significant factual differ-

ence" between the two cases. See majority op. at 975. It is also significant that the subpoenas were quashed without prejudice to the government's right to renew them at a more suitable time. *In re Grand Jury Matters, supra.* I would further note that the First Circuit case and the instant case also differ significantly in the deference shown by the reviewing courts to a *district court's* evaluation of whether compliance with a subpoena would be unreasonable or oppressive under the facts before it. As the First Circuit Court of Appeals noted, the determination of when the grand jury's right to unprivileged evidence outweighs the right of the defense bar and its clients not to be disturbed is one that turns on the particular facts of the case as evaluated by the *district court. Id.*

not, in a criminal conspiracy in which legal representation is a fringe benefit for the members of the conspiracy. If the information is shown to be irrelevant to the grand jury's investigation, the subpoena may be quashed. If the information is relevant, the target's future potential right to retain counsel of his choice, which will attach if and when he is indicted, will be adequately protected by a pre-trial hearing to determine whether the government intends to call the attorney as a witness at trial, and whether the accused's right outweighs the various interests of the government and the public. The appropriate time to balance such conflicting interests is after the constitutional right has attached and disqualification is more than a speculative threat dependent on indictment, a decision to prosecute, and a decision to call the attorney as a witness at trial.

In my view, it is crystal clear that the majority has utterly failed to show that the district court acted so arbitrarily as to abuse its discretion in determining that, under these circumstances, requiring an unindicted target's attorney to disclose relevant, unprivileged information would not be unreasonable or oppressive. It strikes me that, under the guise of reviewing the district court's exercise of its discretion, the majority in reality is attempting to create a new constitutional requirement to be met by the government whenever it seeks to enforce a grand jury subpoena served on an attorney representing an unindicted target of a grand jury investigation. Since no constitutional right to retain counsel of one's choice attaches while the target of a grand jury investigation remains unindicted, I decline to join the majority in importing a concept in the administration of the criminal law totally foreign to the law of the United States Supreme Court and of this Circuit.

I would affirm the district court's order denying Doe's motion to quash the grand jury subpoena duces tecum. From the majority's refusal to do so, I respectfully but emphatically dissent.