**In re GRAND JURY MATTER NUMBER 86–525–5.**

**In re GRAND JURY MATTER NUMBER 86–525–6.**

Nos. 86–525–5, 86–525–6.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1987.

Opinion on Motions for Reconsideration Feb. 9, 1988.

---

**456**

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Presently before us are two Motions to Quash Subpoenas issued pursuant to a grand jury investigation upon application of the United States Attorney's Office. The subjects of the grand jury investigation are the alleged members of an illegal narcotics organization whom the grand jury is investigating for possible violations of federal narcotics laws as well as income tax evasion. (*See* Motion to Quash, Grand Jury Matter No. 86–525–5, Doc. # 1, *Schofield* affidavit attached thereto as Exhibit "C".)

The government seeks to obtain from two law firms all records reflecting the amount of fees and/or costs received by the firms from or on behalf of individuals named in the grand jury subpoenas. Specifically, the government seeks seven (7) discrete categories of information, which are as follows: (1) Cash Receipts entries; (2) Bank deposit tickets; (3) Cash Receipts issued for payments (including cash or check); (4) Payment ledgers; (5) Retained copies of any checks received; (6) Any documents identifying the person making the payment; and (7) Records identifying things of value received in lieu of cash or check and the identity of the person tendering the things of value. (*See id.* at Exhibit "A" and Motion to Quash, Grand Jury Matter No. 86–525–6, Doc. # 1, Exhibit "A".) The subpoena in Grand Jury Matter No. 86–525–5 is directed to the "Custodian of Records" of the law firm. The grand jury in this subpoena seeks the documents and information described above with regard to twenty-four (24) different individuals who are designated by their first and last names only. Of these twenty-four (24) individuals, counsel for the law firm to which the subpoena is directed represents that the firm has in the past represented eleven (11) people with names matching those on the list, and of those eleven (11), continues to represent six (6) of them in an undisclosed capacity. The subpoena in Grand Jury Matter No. 86–525–6 is directed to either the firm's senior partner or the firm's designated "Custodian of Records". Here, the grand jury seeks the documents and information listed above with regard to but a single individual. The individual is described not only by his first and last name, but also by an address.

The law firms to which the subpoenas are directed have raised a variety of objections, constitutional and otherwise, which

they claim require that the subpoenas be quashed. Those challenges may be summarized as follows:

(a) the subpoenas intrude upon the ongoing lawyer/client relationship of the six (6) individuals currently represented by the law firm subpoenaed in Grand Jury Matter No. 86–525–5 and the single individual currently represented by the firm subpoenaed in Grand Jury Matter No. 86–525–6 in violation of the Sixth Amendment to the United States Constitution;

(b) the subpoenas intrude upon the aforementioned ongoing lawyer/client relationships in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution;

(c) the subpoenas intrude upon individual client's choice of representation in violation of the Sixth Amendment and the Due Process Clause of the Fifth Amendment;

(d) the act of producing the documents sought by the grand jury may tend to implicate the individuals in the commission of the very acts for which they have sought representation;

(e) the government has failed to proffer any reason why the information sought cannot be obtained through other means, thereby avoiding interference with ongoing lawyer/client relationships;

(f) the use of a grand jury subpoena in these matters to secure the information sought by the government violates Rule 17(c) of the Federal Rules of Criminal Procedure and this court should quash the subpoenas pursuant to its supervisory power over the operations of the grand jury; and

(g) the subpoena issued in Grand Jury Matter No. 86–525–5 violates Rule 17(c) of the Federal Rules of Criminal Procedure in that it is overbroad, unspecific and might require the law firm to produce information unnecessary and unwanted by the Grand Jury since the subpoena only identifies the individuals by their first and last names and provides no other information which would demonstrate that these are, in fact, the individuals which the Grand Jury seeks such information with regard to.[1]

Counsel argue that before an attorney for an unindicted target of a grand jury investigation may be compelled to produce the documents and information delineated above, the government should be required to make a preliminary showing of: (1) the relevance of the attorney's testimony and records; (2) an important need for the testimony and documents; and (3) the lack of an alternative source from which the information sought may be obtained.[2]

▆▆▆▆ Counsel first attempt to anchor their argument that such a preliminary showing should be required upon the Fifth and Sixth Amendments to the United States Constitution, and more specifically, an individual's purported right to counsel of his or her own choosing. As is admitted

---

1. Counsel for the law firm subpoenaed in Grand Jury Matter No. 86–525–5 also argues that the subpoena should be quashed since the government through its Assistant United States Attorney has indicated that the specific attorney of the firm who represented any of the twenty-four (24) individuals listed in the subpoena will be required to testify before the Grand Jury and at trial as to (1) whether the individual represented is, in fact, the individual listed in Schedule "A" attached to the subpoena and (2) who paid for each client's representation. We find this argument to be without merit. The subpoena at issue was directed simply to the "Custodian of Records" of the law firm, and not to any attorney. The subpoena, on its face, does not require a specific attorney of the firm to appear before the Grand Jury, and counsel for the firm has made no representation that the subpoena can only be complied with by such an appearance. Likewise, contrary to the government's assertion, Government's Response to Motion to Quash, Doc. # 2, ¶ 10, the subpoena does not require the firm to disclose the addresses and telephone numbers of the individuals listed in the subpoena. Any discussions among counsel and the Assistant United States Attorney as to possible future occurences are irrelevant to our decision today. We address only what is required in order to comply with the face of the subpoena.

2. Neither law firm has asserted that the government has failed to demonstrate, through the *Schofield* affidavit filed by the Assistant United States Attorney, the relevance of the documents and information sought to the Grand Jury's investigation, nor has counsel asserted that the information is being sought for an improper purpose, such as, a specific attempt to insure disqualification of a target's attorney of his choosing.

**458**

by counsel for both law firms, the right to counsel specified in the Sixth Amendment does not attach at the grand jury stage. An individual subpoenaed to testify before a grand jury has neither a right to have counsel appointed to "represent" him, nor a right to have counsel he has retained on his own accompany him into the grand jury room. *See, e.g., In Re Grand Jury Subpoena Served Upon Doe,* 759 F.2d 968 (2d Cir.1985), *rev'd. en banc,* 781 F.2d 238. Thus, with the possible exception of the six (6) individuals the law firm in Grand Jury Matter No. 86–525–5 asserts that it continues to represent, Motion to Quash, Doc. # 1, ¶ 7, and the single individual in Grand Jury Matter No. 86–525–6 who has retained that firm to represent him with regard to this grand jury investigation, Motion to Quash, Doc. # 1, ¶ 3, the Sixth Amendment and the rights that it provides thereunder at present provide no basis for the firms' argument. As to the six (6) individuals in Grand Jury Matter No. 86–525–5 just mentioned, with the exception of one (1), the firm has failed to offer any explanation as to the nature of its continuing representation of these individuals. It is unclear whether it represents them in civil or criminal litigation, and if the latter, whether these individuals have sought the firm's legal counsel only with regard to this grand jury investigation or some other criminal prosecution. As shall be seen, only in the latter situation would the firm possess some basis for its argument that the subpoena should be quashed. As to the one individual the firm subpoenaed in Grand Jury Matter No. 86–525–5 has offered some explanation as to the nature of its continuing representation and the single individual represented by the firm subpoenaed in Grand Jury Matter No. 86–525–6, it is clear that such representation does not pertain to, *e.g.,* an impending state criminal prosecution. *See, e.g., In Re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984). Thus, we are not presented with a situation where the attorneys' compliance with the subpoenas at issue here might result in their disqualification in another case. Therefore, we find no basis in the Sixth Amendment to quash the subpoenas as they pertain to any of the individuals either firm claims to represent.

The firms' next line of attack upon the subpoenas is the Due Process Clause of the Fifth Amendment. Relying heavily upon Judge Rosenn's opinion in *In Re Grand Jury Subpoena Served Upon Doe,* 759 F.2d 968, counsel argue that under the Due Process Clause, a right to counsel of one's choice may exist regardless of whether formal criminal proceedings have been instituted against the individual. In *In Re Grand Jury Subpoena Served Upon Doe,* Judge Rosenn, sitting in the Second Circuit by designation, concluded that,

> when a subpoena is issued to an attorney to testify before a grand jury investigating his client whom he has heretofore represented, and where the attorney will be disqualified if he testifies, the Government should make a preliminary showing of relevance and reasonable need.

759 F.2d at 975.

In reaching this conclusion, Judge Rosenn explicitly stated that, "This case does not involve the ... status of sixth amendment rights during the grand jury proceedings". *Id.* at 971. Rather, according to Judge Rosenn, the case involved "a (c)lient's right to have counsel of his choosing in the event an indictment is returned against him—a point at which the sixth amendment unquestionably becomes applicable". *Id.* at 972. Based on this reasoning, the court concluded that if the "potential" right was not protected in such a situation at the grand jury stage, it would be rendered meaningless by the time the right did attach.

In *In Re Special Grand Jury No. 81–1 (Leon D. Harvey),* 676 F.2d 1005 (4th Cir. 1982), a panel of the Fourth Circuit Court of Appeals similarly concluded that, "When a grand jury subpoena undermines an ongoing attorney-client relationship, the United States Attorney should also show by affidavit an important need for the information sought". *Id.* at 1011.

Both panel decisions in *In Re Grand Jury Subpoena Served Upon Doe* and *Harvey* have been vacated. In the latter, the Fourth Circuit Court of Appeals, sitting *en banc,* vacated and withdrew the panel's opinion when Harvey was indicted and became a fugitive from justice. *See In Re Special Grand Jury No. 81–1 (Leon D.*

*Harvey),* 697 F.2d 112 (4th Cir.1982). The panel opinion in *In Re Grand Jury Subpoena Served Upon Doe,* however, was reversed on the merits by the Second Circuit Court of Appeals sitting *en banc* by a 9–2 vote. *See In Re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238.

■ On review, the Second Circuit Court of Appeals concluded that neither existing or potential Sixth Amendment rights nor the Fifth Amendment's Due Process Clause require a preliminary showing of "need" before a subpoena served upon an attorney whose client is an unindicted target of a grand jury investigation may be enforced. As to the target's Sixth Amendment arguments, the court concluded that his "interest in continuing to be represented by his present counsel was not of constitutional dimensions", *id.* at 244, since his Sixth Amendment rights had not attached. Regarding the target's argument that enforcement of the subpoena would "chill" his "potential" Sixth Amendment rights, the court declined to adopt a *per se* rule that an attorney's testimony before a grand jury as to benefactor payments would inevitably lead to the disqualification of that attorney, thereby chilling the target's potential Sixth Amendment rights. As to the target's Fifth Amendment due process argument, the court reasoned that, even if one accepted the "perceived" view of the Third Circuit Court of Appeals that an individual's right to counsel of choice

was protected by the Fifth as well as the Sixth Amendment, there is no basis for a conclusion that the former protects this right more than the latter in either a "qualitative or a quantatative sense". *Id.* at 246.[3] *See also, Matter of Klein,* 776 F.2d 628 (7th Cir.1985); *United States v. (Under Seal),* 774 F.2d 624 (4th Cir.1985); *In Re Grand Jury Investigation,* 769 F.2d 1485 (11th Cir.1985); and *In Re Osterhoudt,* 722 F.2d 591 (9th Cir.1983).

Upon initial review of the motions and memoranda of law submitted to us by the government and both law firms, we believed that we were faced with a Hobson's choice between Judge Rosenn's opinion in *In Re Grand Jury Subpoena Served Upon Doe, supra,* and the great weight of authority to the contrary, including the Second Circuit Court of Appeals *en banc* review of that opinion. Closer examination, however, revealed that we are not, in fact, faced with such a difficult decision since the facts presented to us are distinguishable from those Judge Rosenn faced.

■ First, under Judge Rosenn's analysis, he believed that both parties had conceded that the target's attorney would ultimately be disqualified if he complied with the subpoena. 759 F.2d at 975 n. 9; *but see,* 781 F.2d at 245 n. 1. Judge Rosenn specifically stated that he expressed no opinion as to the standard to be applied in a case where the prospective disqualification of the attorney was only "speculative".

**3.** The Second Circuit expressed serious misgivings regarding the Third Circuit's statement in *United States v. Flanagan,* 679 F.2d 1072 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), that both the Sixth Amendment and the Due Process Clause of the Fifth Amendment afford protection to an individual's choice of counsel. 781 F.2d at 238. We, likewise, question the meaning of the panel's statement in *Flanagan.* As recognized by the Second Circuit, the case which the Third Circuit cited as authority for its statement, *Davis v. Stamler,* 650 F.2d 477 (3d Cir.1981), involved a state criminal defendant. Thus, any right to counsel possessed by the defendant would have to have been found in the Due Process Clause of the *Fourteenth Amendment.* By the process of "selective incorporation", it is clear that the parameters of the "right to counsel" provided for in the Sixth Amendment have been made applicable to the state's through the Due Process Clause of the

Fourteenth Amendment. However, for *Davis v. Stamler* to stand for the proposition represented by the panel in *Flanagan,* it would have to mean that the court in *Stamler* rendered an unnecessary constitutional adjudication since they were only required to address the bounds of an individual's right to counsel under the Due Process Clause of the Fourteenth Amendment, *not* the Fifth Amendment, unless they perceived the Due Process Clause of the Fifth Amendment as providing some greater right to counsel than did the Sixth. We can find no support for such a proposition however. Likewise, since the defendants' right to counsel in *Flanagan* had "attached" since they had been indicted, it was unnecessary for the court to even refer to the Fifth Amendment, unless, once again, the court perceived the Fifth Amendment's Due Process Clause as providing some greater right to counsel than does the Sixth. Also once again, we can find no indication in the court's opinion in *Flanagan* that it believed such to be true.

759 F.2d at 975 n. 9. Here, there is no agreement that either firm will probably be disqualified if and when their clients are indicted.

Second, it is also highly speculative whether such disqualifications will result. The subpoenas at issue here do not require that any attorney appear before the Grand Jury.[4] Full compliance with the subpoenas may be accomplished by the appearance of the firms' bookkeepers before the Grand Jury. No attorney need "testify" before the Grand Jury. *See, e.g., United States v. (Under Seal), supra.*

These facts lead us to the conclusion that neither the Fifth nor Sixth Amendments require the government to demonstrate an important, compelling or reasonable need for an attorney's "fee" records pertaining to an unindicted target of a grand jury investigation before it may enforce a subpoena for such records pursuant to a grand jury investigation where the attorney is not required to appear before the grand jury and give testimony and the subpoena may be complied with simply by the appearance of the firm's bookkeeper. The only showing, therefore, that need be made is one of relevance.

■ The law firms next argue that the subpoenas should be quashed since production of the records may tend to implicate the individuals in the commission of the very acts for which they sought representation. We find this argument to be without merit as well. Neither the Fifth Amendment's privilege against self-incrimination nor the attorney-client privilege prevent the disclosure of the fee records sought by the government. Clearly, enforcement of the subpoenas would not violate the targets' Fifth Amendment privilege against self-incrimination since it is the attorney, rather than the target, who is being compelled to produce the records. No target is being compelled to take any action. *See, e.g., United States v. (Under Seal), supra.*

■ Likewise, the common law attorney-client privilege provides no basis for quashing either subpoena. The general rule is that neither a client's identity nor the payment of attorney's fees and expenses fall within the privilege. An exception to the general rule is recognized, however, where the possessor of the privilege demonstrates "that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought". *Id.* at 628, *quoting, United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977). This exception has been interpreted narrowly. Further, it has had a gloss put on it in that even where the client meets his or her burden of demonstrating that disclosure of the information would have such an effect, the exception may not apply where the information will not provide the "last link" in the chain of evidence against the client. *See, e.g., In Re Grand Jury Subpoenas Duces Tecum,* 695 F.2d 363 (9th Cir.1982). Here, no showing has been made by either firm that production of the records sought by the government would implicate any of their clients, past or present, in the criminal activities for which they sought representation, nor has it been demonstrated that such information would in any way provide the "last link" in a chain of incriminating evidence against such clients. Thus, the information sought by the government is not protected by the attorney-client privilege.

■ The firms' final challenge is to the validity of the subpoenas under Federal Rule of Criminal Procedure 17(c). Counsel initially argue that pursuant to our supervisory powers over the grand jury, we should require the government to demonstrate that it cannot obtain the information it seeks from other sources. This argument does perhaps possess some merit, for if the government could obtain the information from elsewhere, its efforts to obtain it from a target's attorney would constitute a

---

**4.** The subpoena involved in Grand Jury Matter No. 86–525–5, as stated in note 1, *supra*, is *only* directed to the firm's "Custodian of Records". The subpoena involved in Grand Jury Matter No. 86–525–6 is directed in the alternative to either the specific attorney who represented the individual described in the subpoena or the firm's designated "Custodian of Records". Thus, in neither instance need an attorney appear before the grand jury pursuant to the subpoenas which are before this court.

"needless" intrusion upon the attorney/client relationship. It is unclear to us, however, how counsel is defining the term "information". It appears that they are arguing that the government should be required to attempt to obtain other "evidence" against their clients before they may resort to subpoenaing their records to demonstrate the existence of a criminal "organization", "benefactor" status or tax evasion, and only if no such other evidence is available may the government then seek to prove its case by resort to an attorney's fee records. Thus, if a law firm's fee records only provide "cumulative" incriminating evidence against a client, the firm should not be compelled to comply with the subpoena. We do not view the concept so broadly, for if we did, the only time the grand jury would be entitled to obtain such fee records would be where the government could state that such information would perhaps provide the "only" evidence against the target. Under our analysis, we define the term as encompassing the "specific" information sought by the grand jury, *i.e.*, if the government can, *e.g.*, obtain information that an individual paid X number of dollars to an attorney on behalf of another person from a source other than the attorney, then the government should *perhaps* be required to seek the information from that alternative source. Even if we were to impose such a requirement, however, no showing has been made here that such an alternative source for the *specific* information the government seeks exists. Counsel for the firm subpoenaed in Grand Jury Matter No. 86–525–6 argues that the information sought by the grand jury may be obtained from the Internal Revenue Service, since the firm, in compliance with federal statute and IRS regulations, has reported cash payments in excess of $10,000.00 from clients to the IRS. As pointed out by the Assistant United States Attorney, however, the information submitted by the firm to the IRS does not indicate who made the payments, nor does it reflect payments of less than $10,000.00. Further, the Grand Jury has also sought "records identifying things of value received in lieu of cash or check"; this information also would not be available from the IRS. As can be seen, the Grand Jury will not be able to obtain much of the information it seeks by resort to this alternative source.

█ The firm subpoenaed in Grand Jury Matter No. 86–525–5 also argues that the subpoena served upon it contravenes Rule 17(c) of the Federal Rules of Criminal Procedure in that it is impossible to discern whether the individuals listed in the subpoena are, in fact, the individuals who are presently under investigation by the Grand Jury. We agree. Although, as stated above, we find no constitutional, statutory or common law privilege which protects the information sought by the Grand Jury from disclosure, we see no reason why such information should be disclosed when the individual to whom it pertains may not even be the person the Grand Jury is investigating. In such a case, the information would, in fact, be irrelevant to the Grand Jury's investigation. We decline, however, to adopt a *per se* rule that the government must always be able to somehow identify the individual under investigation in a case such as this by something more than just the person's first and last name in order to demonstrate the relevance of the information it seeks to the Grand Jury's investigation. There may be situations where it is impossible for the government to make such a showing. In such a case, no further identification of the individual may be justified. We need not address this scenario, however.

Under the facts presented to us, we will initially require the government to attempt to somehow provide additional identifying information to the firm subpoenaed in Grand Jury Matter No. 86–525–5. We leave it to the Assistant United States Attorney, who has already apparently indicated a willingness to do such, *see* Government's Response to Motion to Quash, Grand Jury Matter No. 86–525–5, Doc. # 2, ¶ 6, to decide how this may best be accomplished. If the government believes it is impossible for it to provide such further identifying information to the *objectively reasonable* satisfaction of counsel for the firm, it should so inform us by an appropriate affidavit. At that time, we will then be required to re-examine the issue.

Appropriate orders follow.

462

## ORDER

### MATTER NO. 86–525–5

AND NOW, this 28th day of October, 1987, in accordance with the attached memorandum, IT IS ORDERED that:

(1) all Motions and accompanying Memoranda of Law filed in this matter are SEALED and IMPOUNDED as matters pertaining to a grand jury investigation;

(2) the government shall within fifteen (15) days of the date of this Order in the form of an affidavit supply counsel for the firm of (Under Seal), with the identifying information described and discussed in the attached memorandum. The firm shall comply with the subpoena served upon it within fifteen (15) days of the receipt of such information; and

(3) (Under Seal) Motion to Quash Grand Jury Subpoena, Doc. # 1 is DENIED.

## ORDER

### MATTER NO. 86–525–6

AND NOW, this 28th day of October, 1987, in accordance with the attached memorandum, IT IS ORDERED that:

(1) all Motions and accompanying Memoranda of Law filed in this matter are SEALED and IMPOUNDED as matters pertaining to a grand jury investigation;

(2) (Under Seal) or the designated Custodian of Records of (Under Seal) and Associates shall comply with the subpoena served upon it within fifteen (15) days of the date of this Order; and

(3) (Under Seal) Application to Quash Grand Jury Subpoena, Doc. # 1, is DENIED.

## MEMORANDUM AND ORDER

### ON MOTIONS FOR RECONSIDERATION

This matter comes before us once again pursuant to Motions For Reconsideration and/or Stay filed by two law firms which were served with grand jury subpoenas. Also before us is a Motion To Intervene in these proceedings filed on behalf of (Under Seal) Previously, the law firms sought to have quashed grand jury subpoenas served upon them which required that they produce all records reflecting the amount of fees and/or costs received by the firms from or on behalf of individuals named in the subpoenas. By Memorandum and Order dated October 28, 1987, we denied the firms' motions. The law firms seek reconsideration of our Memorandum and Order or stay of enforcement of the subpoenas based on perceived "changed circumstances" which developed subsequent to the issuance of our decision.

As noted in our prior Memorandum, the government sought production of the documents described above pursuant to a grand jury investigation of the alleged members of an illegal narcotics organization. In particular, the grand jury was seeking evidence of "benefactor payments" to the firms by (Under Seal), who is represented by the firm involved in Grand Jury Matter No. 86–525–5, and (Under Seal), who is represented by the firm involved in Grand Jury Matter No. 86–525–6, on behalf of alleged members of the "(Under Seal) crime family". Through such evidence, the government hoped to demonstrate to the grand jury, *inter alia*, the status of the (Under Seal) brothers as the patriarchs of a continuing criminal enterprise and of the other individuals as members of the organization. The government also seeks the documents with regards to the grand jury's collateral investigation of the alleged members of the (Under Seal) crime family for violation of the federal income tax laws.

As to the Petition To Intervene filed by (Under Seal) the government argues that the Petition should be denied because: (1) it is untimely and (2) (Under Seal) has failed to demonstrate that his interests are not adequately represented by the firm involved in Grand Jury Matter No. 86–525–5. Were this a civil case, we would be inclined

to deny the Petition on the grounds asserted by the government; however, this is not a civil case. Despite the late hour at which (Under Seal) seeks to involve himself in this matter and our belief that his involvement will add nothing to that which is already before us, we will grant his Petition based on the fundamental constitutional issues involved, since it is, in fact, (Under Seal) Sixth Amendment right to counsel which his attorneys seek to protect. We see no reason to delay our disposition of these matters, because the issues involved have been exhaustively addressed by his counsel, and we believe no new issues could be raised by (Under Seal) beyond those already addressed by his attorney.

As to the Motions For Reconsideration or Stay pending before us, the "changed circumstances" put forth by the law firms pertain to the fact that since the issuance of our prior opinion, (Under Seal) and (Under Seal), among others, have been indicted by a grand jury sitting in this District for violation of the Racketeer Influenced and Corrupt Organizations Act, specifically, 18 U.S.C. § 1962(c), conspiracy to distribute cocaine in contravention of 21 U.S.C. § 846, operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848, money laundering in violation of 18 U.S.C. § 1956 and numerous distributions of cocaine in contravention of 21 U.S.C. § 846. Thus, unlike the situation we faced when we previously denied the firms' Motions To Quash the grand jury subpoenas, we are here faced with a situation where an individual's Sixth Amendment right to counsel has attached at least with regard to the charges listed above. *See, e.g., In re Grand Jury Matters*, 751 F.2d 13 (1st Cir.1984).

■ Initially, the two firms argue that the subpoenas should be quashed as an improper attempt by the United States Attorney to gather additional evidence against their clients as to those charges for which they have already been indicted. It is indeed true that a prosecutor may not, once an individual has been indicted, use the grand jury process to gather additional evidence against the person for use at his upcoming trial. This rule does not, however, prevent a prosecutor, *via* a grand jury, from gathering evidence against the person as to crimes for which he has not been indicted. This is true even if the investigation may by happenstance uncover evidence which can be used against the person at his trial for those crimes for which he has already been indicted. All that is required is that the "sole" or "dominant" purpose of the continuing grand jury investigation *not* be a search for evidence to be used at the defendant's upcoming trial. Further, given the presumption of regularity applicable to grand jury proceedings, the burden is upon the law firms and (Under Seal) to demonstrate that the grand jury is being used for an improper purpose. *See, e.g., In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Robert M. Simels, Esq.)*, 767 F.2d 26 (2d Cir.1985) and *In re Grand Jury Proceedings*, 632 F.2d 1033 (3d Cir.1980).

■ Examining the record before us, we can find no evidence to indicate that the dominant purpose of the United States Attorney's continued pursuit, through the utilization of the subpoena power of a grand jury, of the fee records maintained by the law firms, as described above, is to obtain further evidence against (Under Seal) and (Under Seal) to buttress the government's case against them at their upcoming trials. Normally, the best, if not the only, evidence of such an improper utilization of the grand jury process is the "timing" surrounding the issuance of the grand jury subpoenas. Here, the government averred in the *Schofield* affidavits filed several months ago and before any indictments were issued against the (Under Seal) brothers or the alleged members of their organization that it was seeking the fee records not only with regard to the crimes for which indictments have been rendered, but also with regard to the grand jury's probe of possible violations of federal income tax laws. Hence, the grand jury's income tax evasion probe was not a scheme conjured up by the prosecutor at the last minute as a subterfuge to cover the true purpose of his continued use of the grand jury process. The mere fact that the United States Attorney chose not to seek indictments on in-

come tax violations at the same time as the other indictments were issued does not mean that the grand jury's income tax evasion investigation is any less important than the investigation as to which it has already issued indictments.

■ The two law firms next contend that the grand jury subpoenas should be quashed or, at a minimum, enforcement thereof stayed, on the ground that enforcement of the subpoenas would violate their clients' Sixth Amendment right to counsel of their choice. The firms' argument in this regard is based on two alternative premises. The first is that enforcement of the subpoenas will inevitably lead to their disqualification as counsel for certain defendants in the trial on the charges for which their clients have been indicted. The second is that, even assuming production of the documents sought by the grand jury will not result in their disqualification, enforcement of the subpoenas will destroy the "trust" necessary to an effective attorney-client relationship. In examining the issues raised by this argument, we must balance society's right to seek out and deter crimes against the individual's constitutional right to counsel. This examination presents no simple task under circumstances such as these, for it is easy to lose sight of the fact that protection of the rights of the individual ultimately insures the protection of the rights of society as a whole. In *In re Grand Jury Matters*, 751 F.2d 13, the First Circuit Court of Appeals concluded that the district court had not abused its discretion in quashing subpoenas served upon the attorneys for individuals facing impending criminal trials in state court on charges related to the grand jury's investigation. The First Circuit concluded that a district court may, without reference to any specific privilege, quash a grand jury subpoena pursuant to Federal Rule of Criminal Procedure 17(c) where it may plausibly conclude that the "timing" of the subpoena "unduly" and "unnecessarily" burdens an individual's constitutional right to counsel in criminal prosecutions. As noted by the First Circuit, however,

There can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury. Even when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed. *The matter is one that turns on particular facts as evaluated by a district court.*

*Id.* at 19. (Emphasis added.)

Examining the record before us, we believe that the facts in this case are quite distinguishable from those faced by the district court in *In re Grand Jury Matters*. First, it is clear that the United States Attorney is not utilizing the grand jury as a means of harassing the law firms and their clients since the subpoenas at issue were served long before the grand jury issued any indictments. Second, as noted in our prior Memorandum, the subpoenas involved here, unlike those in *In re Grand Jury Matters*, do not require the appearance before the grand jury of any attorney from either firm. The only thing that is required is that the "bookkeeper" for each firm appear before the grand jury with those documents in the firms' possession listed in the subpoenas. Given this fact, it cannot be said that any attorney is being compelled to be a witness against his client, that either firm faces potential disqualification in the pending criminal trial, or finally, that any "wedge" will *reasonably* be driven between the firms and their respective clients because production of the documents sought might disclose evidence inculpating the firms' clients in further criminal conduct. Given the narrow manner in which the grand jury subpoenas were drafted so as to specifically avoid requiring any attorney to possibly give evidence against his client, we do not believe that it can be said that the "right" of the firms and their clients not to be disturbed outweighs the grand jury's right to production of every man's unprivileged evidence. Enforcement of the subpoenas at this time will in no way result in any unreasonable disturbance of any attorney-client relationship, other than the possibility the fee records will inculpate certain individuals in further criminal acts. This possibility,

standing alone, is not sufficient reason for quashing a grand jury subpoena, for if it were, the government would never be entitled to force an attorney to produce such fee records. No court has advanced such a position.

Regarding the firm's representation in Grand Jury Matter No. 86–525–5, *via* the affidavit of its counsel, that the records sought by the grand jury reveal no inculpatory evidence, we simply state that it is for the grand jury to determine what, if any, inculpatory evidence is contained in the documents. Likewise, the firm's bookkeeper cannot avoid appearing before the grand jury simply by representing through the firm's counsel that she knows nothing that will assist the grand jury in its investigation.

Finally, as to the firms' counsels' continued argument that one or more of the firms' attorneys will ultimately be subpoenaed to appear before the grand jury or to testify at trial, we state, once again, that we are here concerned only with what is required by the subpoenas that have already been issued. The possible problems which may arise if and when the prosecutor does attempt to force one of the firms' attorneys to appear before the grand jury and/or testify at trial will be addressed when and if that issue arises.

In sum, despite the fact that certain individuals represented by the two law firms have been indicted on the charges listed above, we find no grounds, constitutional or otherwise, upon which to conclude that the subpoenas at issue should be quashed. Therefore, we will deny all Motions For Reconsideration or Stay.