**UNITED STATES of America**

v.

**Russell McLAUGHLIN Jr., Mark McLaughlin, and Robin McLaughlin, a/k/a "Alice McLaughlin Pavlo".**

**Criminal No. 95–00113.**

United States District Court,
E.D. Pennsylvania.

Dec. 22, 1995.

Maureen Barden, Asst. U.S. Atty., Philadelphia, PA, for plaintiff.

James C. Schwartzman, Philadelphia, PA, for Russell McLaughlin.

Solomon Fisher, Philadelphia, PA, for Mark McLaughlin.

Joseph S. Berarducci, Philadelphia, PA, for Robin McLaughlin Pavlo.

## MEMORANDUM

DITTER, District Judge.

The defendants, who are siblings, are under indictment for conspiracy, tax evasion, and filing a false federal income tax return in connection with the 1988 return of Building Inspection Underwriters, Inc. ("BIU"), a company they and members of their family own. BIU performs building inspections for municipalities in Pennsylvania and New Jersey. The defendants filed several pretrial motions seeking dismissal of the indictment, suppression of evidence, and the striking of certain allegations from the indictment.

1. *The Motion to Dismiss the Indictment Based on Government Misconduct.*

■ The defendants argue that "government misconduct" occurring during the investigation requires that I dismiss the charges against them. I should do so, they contend, either because the alleged misconduct violated the Constitution or pursuant to the federal courts' supervisory power. Dismissal of an indictment with prejudice is the "most severe sanction possible." *United States v. Isgro,* 974 F.2d 1091, 1097 (9th Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1581, 123 L.Ed.2d 148 (1993). Among other things, it means that possibly guilty defendants will go unpunished. Therefore, it is appropriate only in narrow circumstances where the government engaged in serious misconduct and such misconduct prejudiced the defendants. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 254–55, 108 S.Ct. 2369, 2373–74, 101 L.Ed.2d 228 (1988).

The defendants contend that Robert W. White, an Internal Revenue Service ("IRS") special agent, engaged in misconduct when he violated several agency regulations and federal statutes during the investigation. In support of their motion, the defendants subpoenaed Special Agent White and IRS Agents Robert Tengood and William Fredericks. Before compelling that testimony, I required the defendants to produce some evidence that Special Agent White actually engaged in misconduct that prejudiced the

defendants. I held six days of hearings during which 16 witnesses testified. Because I find no violation of the defendants' constitutional or statutory rights and that exercise of my supervisory power is unwarranted, I will deny their motion to dismiss the indictment and refuse the defendants' request to compel the IRS agents' testimony.

### A. *The Alleged Misconduct.*

#### 1. *Violations of IRS policies and regulations.*

The defendants allege that the following acts and omissions by Special Agent White violated IRS regulations and policies. First, they contend that Special Agent White opened the investigation based on information obtained from the McLaughlins' business competitor, Gerald Azeff, who the defendants allege is also a friend of Special Agent White, and obtained information from Bernard McGuigan, the defendants' "sworn enemy." According to the defendants, that violated IRS policy prohibiting agents from having personal relationships with "informants" and is also unfair because information obtained from the defendants' enemy or competitor is unreliable.

Second, the defendants allege that Special Agent White did not warn defendant Russell McLaughlin Jr. of his rights to counsel and to remain silent before three noncustodial interviews. The evidence at the hearing established that during the investigation, Special Agent White issued a summons demanding the production of, among other things, BIU corporate and financial records. Russell McLaughlin Jr. appeared as the corporate custodian of records, provided several boxes of documents, and answered Special Agent White's questions about them. That interview took place in Attorney Joseph P. Walheim, Esquire's office. The defendants claim that Walheim represented the defendants' father, Russell McLaughlin Sr., who was the sole target of the investigation at that time. On two other occasions, Russell McLaughlin Jr. provided documents to the IRS. While the record is, at best, unclear, I will assume for the purposes of this opinion that Russell McLaughlin Jr. was "interviewed" by Special Agent White when he provided documents on the two other occasions. According to the defendants, the failure to warn Russell McLaughlin Jr. violated IRS policy.

Third, Special Agent White did not issue a receipt when Russell McLaughlin Jr. produced the BIU corporate and financial documents. Among other things, the IRS summons called for the production of records for a BIU account at the New Jersey National Bank. The indictment alleges that Russell McLaughlin Jr. failed to produce those records and that the account was used to conceal taxable funds received from BIU customers. That failure to issue the receipt violated IRS policy.

Fourth, the defendants claim that Special Agent White attended a meeting with his "informant," Azeff, during which Special Agent White allowed Azeff to control the meeting and ask questions of those in attendance. The evidence at the hearing established that in March, 1989, Azeff held a meeting with a state and a local official which Special Agent White attended. Following the meeting, Azeff sent an anonymous letter to the Pennsylvania Attorney General's Office accusing Russell McLaughlin Jr. of extortion and improperly influencing a Newtown Township, Pennsylvania, official. According to the defendants, Special Agent White's conduct violated IRS policy requiring agents to control "informants" and prevent them from asking questions during witness interviews.

Fifth, Special Agent White mailed to 77 municipalities IRS "circular letters" which requested financial information on some of the defendants' family businesses. Several of the recipients of the circular letters did not conduct business with the McLaughlins' companies and would, according to the defendants, possess no information relevant to the investigation of them. None of the letters, however, mentioned any of the defendants by name. According to the defendants, this violated IRS policy requiring agents to consider how subjects of investigations will be harmed or embarrassed by issuance of the circular letters.

### 2. Violations of federal statutes.

The defendants also contend that Special Agent White violated federal statutes and court rules. First, the defendants claim he disclosed confidential tax return and grand jury information about them. *See* 26 U.S.C. § 6103; Fed.R.Crim.P. 6(e)(2). The evidence at the hearing established only that McGuigan knew Azeff was Special Agent White's "informant," that an employee of Azeff concluded that the case against the defendants had been approved in Washington, D.C., and was "waiting to go to court," and that Michael Wilfing, a state of New Jersey employee, knew the identities of the targets of the IRS investigation. Each of those individuals denied that Special Agent White provided that information and the defendants produced no credible evidence that he was the source. Second, the defendants claim Special Agent White failed to investigate allegations that McGuigan made false statements in a mortgage loan application and failed to report to the IRS that Azeff altered one of the circular letters and mailed the altered version to some of the McLaughlin family companies' customers. *See* 26 U.S.C. § 7214(a)(8). At the hearing, the defendants failed to establish that Azeff altered the document or that Special Agent White knew that Azeff allegedly did so. Indeed, Attorney Walheim testified that he reported the incident to Special Agent White who assisted Walheim in attempting to determine who sent the altered circular letter. Finally, the defendants charge that Special Agent White obtained documents from the defendants' corporate accountant, Melvin Cherry, and their stockbroker, McLaughlin, Piven, and Vogel, without first issuing summonses. *See* 26 U.S.C. §§ 7602(a)(1), 7609(a).

I will now consider the defendants' arguments that Special Agent White's conduct violated the Constitution or that dismissal of the indictment is warranted pursuant to the federal courts' supervisory power.

### B. Constitutional Arguments.

■ The defendants claim that Special Agent White's alleged misconduct resulted in three violations of their constitutional rights. First, they contend that Special Agent White's failure to warn Russell McLaughlin Jr. violated his Fifth Amendment right to "non-custodial warnings." (*See* Dft.'s Reply at 19). The defendants' argument is without merit because a person has no constitutional right to warnings when he is not in custody. *See, e.g., Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1979).[1] It is undisputed that Russell McLaughlin Jr. was not in custody during any of the interviews and there is no evidence that Special Agent White coerced or intimidated McLaughlin or otherwise acted improperly. While McLaughlin claims that Walheim represented not him, but his father, there is no reason to believe that Walheim would have sat idly by if Special Agent White had attempted to intimidate Russell McLaughlin Jr. or acted improperly and nothing to suggest that Special Agent White knew that Walheim represented only the defendants' father.

■ Second, the defendants contend that Special Agent White violated the Fourth Amendment's prohibition against unreasonable seizures when he obtained documents from Accountant Cherry without first issuing a summons. The evidence at the hearing, however, established that Special Agent White did not "seize" the records, but that Cherry voluntarily provided copies of them. (Tr. 9/19/95 at 65). Moreover, the defendants' voluntary provision of the records to Cherry knowing that they would be used to prepare and be incorporated into tax returns which would be viewed by others, establishes that the defendants had no legitimate expectation of privacy in them. *See Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

■ Third, the defendants argue that Special Agent White's alleged violation of IRS regulations taken together abridged their right to due process. Failure to obey agency regulations does not violate the Constitution unless the regulations themselves

---

**1.** Of course, defendants Mark and Robin McLaughlin have no standing to raise an alleged violation of Russell McLaughlin Jr.'s rights. *See* *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978).

are constitutionally mandated. *United States v. Caceres*, 440 U.S. 741, 749–50, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *Pa. Steel Foundry & Mach. v. Sec'y of Labor*, 831 F.2d 1211, 1219 (1987). None of the regulations at issue are constitutionally mandated. Regardless, obtaining information from the defendants' "enemies" or Special Agent White's friend, attending a meeting conducted by Azeff which Special Agent White did not sufficiently control,[2] or issuing IRS circular letters to municipalities that did not even mention the defendants by name could not have violated even arguably any of their constitutional or statutory rights. *United States v. Payner*, 447 U.S. 727, 733–34, 100 S.Ct. 2439, 2445–46, 65 L.Ed.2d 468 (1980); *see also Rakas*, 439 U.S. at 134, 99 S.Ct. at 425–26. Even accepting the defendants' claims, the alleged violations are all relatively insignificant and they neither singularly nor collectively amount to a violation of due process.

■ While the failure to warn Russell McLaughlin Jr. of his rights or issue him a receipt are somewhat closer calls, it is clear that neither omission warrants dismissal of the indictment. Even if Special Agent White violated IRS policy, he did not act in bad faith. *Cf. Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). There is no evidence that Special Agent White failed to warn Russell McLaughlin Jr. for the purpose of intimidating or coercing McLaughlin to incriminate himself or that McLaughlin was even a target of the IRS investigation. The fact that Special Agent White's questions may have gone beyond those normally directed at a custodian of records (i.e., authenticity, completeness, and chain of custody of the subpoenaed documents) does not establish bad faith. The defendants also failed to establish that Special Agent White's failure to issue the receipt was motivated by bad faith. Indeed, there is no evidence that McLaughlin

requested and was refused a receipt or that Special Agent White failed to provide him one for the purpose of falsely claiming that McLaughlin did not produce the New Jersey National Bank records. The defendants argue that they are now unable to use the nonexistent receipt to prove that Russell McLaughlin Jr. produced those documents. The fact that Special Agent White did not provide a receipt does not prevent them from introducing other evidence supporting that claim.

Because I find no violations of any of the defendants' constitutional rights, I will not dismiss the indictment on that ground.

C. *Supervisory Power.*

■ I also decline to dismiss the indictment pursuant to the federal courts' supervisory power. Federal courts may, within narrow limits, formulate procedural rules not specifically required by the Constitution or federal statute. *Bank of Nova Scotia*, 487 U.S. at 254–55, 108 S.Ct. at 2373–74. However, exercise of that power is only appropriate when the government misbehavior violates "clear" rules designed to protect the fairness of the trial process or grand jury. *See United States v. Williams*, 504 U.S. 36, 45–46, 112 S.Ct. 1735, 1741–42, 118 L.Ed.2d 352 (1992). Courts may not exercise supervisory power on behalf of parties whose rights were not violated, *Payner*, 447 U.S. at 733–34, 100 S.Ct. at 2445–46, or grant relief when a defendant is not prejudiced by the alleged misconduct. *Bank of Nova Scotia*, 487 U.S. at 254–55, 108 S.Ct. at 2373–74.

Strictly speaking, the leading case on the federal courts' supervisory power, *Bank of Nova Scotia*, is factually distinguishable from the instant case. The defendants in that case sought dismissal of an indictment based on allegations that a prosecutor engaged in improper conduct before the grand jury. *See id.* at 260–61, 108 S.Ct. at 2376–77; *see also United States v. Ashland Oil Inc.*, 705 F.Supp. 270, 277 (W.D.Pa.1989). In this case, there are no allegations of improper

---

**2.** The defendants describe the March, 1989, meeting as an interview of a witness by an IRS agent and contend that agency regulations required Special Agent White to "control" it and prevent Azeff, an "informant," from asking questions. The record does not support the defendants' characterization of the meeting. In fact, it

was called by Azeff to provide to state, local, and federal officials information about allegedly criminal behavior by a Newtown Township official and Russell McLaughlin Jr. Nothing in IRS regulations would prevent an agent from attending or obtaining information from such a meeting.

conduct by the assistant United States attorney or that any of the alleged misbehavior occurred in front of the grand jury. *Bank of Nova Scotia* is instructive, however, because it teaches that the prejudice defendants are required to prove is the type that compromises the integrity of the judicial process. *See also Williams*, 504 U.S. at 45–46, 112 S.Ct. at 1741–42 (federal court may exercise supervisory power only when government misconduct results in violation of "clear rule[ ]" designed to protect integrity of grand jury or trial process).

 According to the *Bank of Nova Scotia* Court, a defendant is prejudiced when the misconduct "substantially influenced the grand jury's decision to indict" or when there is "grave doubt" that the decision was free from the substantial influence of the misconduct. *Id.* at 256, 108 S.Ct. at 2374. A showing of prejudice, however, is not required when "the structural protections of the grand jury have been so compromised as to render the proceedings unfair." *Id.* The defendants contend that they do not have to establish prejudice because Special Agent White's alleged misconduct was "pervasive." The Supreme Court has not relieved defendants of the requirement of showing prejudice except in cases where there is racial or gender discrimination in the selection of grand jurors. *Id.* at 256–57, 108 S.Ct. at 2374–75. Because there is no allegation that the grand jury was selected improperly or that "the structural protections of ... [it] were compromised," the defendants must establish prejudice. *See United States v. Soberon*, 929 F.2d 935, 941 (3d Cir.), *cert. denied*, 502 U.S. 818, 112 S.Ct. 73, 116 L.Ed.2d 47 (1991).

 Thus, in order to warrant dismissal of an indictment pursuant to my supervisory power, the alleged misconduct must result in some improper advantage to the government either before the grand jury or the court. Misconduct which results in

prejudice outside the judicial process, such as loss of business or personal or professional embarrassment, is not sufficient to warrant dismissal of an indictment. None of the defendants' allegations of misconduct, either alone or taken together, warrants exercise of my supervisory power.

 Dismissal of the indictment pursuant to my supervisory power based on the defendants' allegations of violations of IRS regulations is not appropriate for several reasons. As detailed above, Special Agent White did not act in bad faith. Moreover, the fact that the IRS has already provided a remedy for violations of its regulations by disciplining employees who violate them makes the additional remedy of dismissal of the indictment unwarranted. *See, e.g.*, Internal Revenue Manual ("IRM") §§ 751.12(2), 752.232(1), 752.432(1). Dismissal of an indictment may be a permissible and effective remedy in a case where the claimed misconduct is substantially more serious than that alleged in this case. Dismissing the charges against these defendants would interfere with the executive branch's function of promulgating and enforcing regulations. *See Caceres*, 440 U.S. at 756, 99 S.Ct. at 1473–74. Finally, as detailed above, most of the alleged "misconduct" did not even arguably violate any of the defendants' rights and none of it prejudiced them.[3]

 Similarly, dismissal of the indictment is not an appropriate remedy for Special Agent White's alleged violations of federal statutes. Both Congress and the IRS have already provided other remedies for violations of those statutes. *See* 26 U.S.C. § 7214(a) (providing for dismissal, fine, and imprisonment for IRS employees' failure to report revenue law violations); 18 U.S.C. § 1905 (providing for dismissal, fine, or imprisonment for disclosure of confidential return information in violation of 26 U.S.C. § 6103); IRM § 752.232(1) (providing for

---

**3.** The closest the defendants come to alleging a violation of anyone's rights is the failure to warn Russell McLaughlin Jr. or issue him a receipt. However, IRS regulations requiring those actions are not "clear rules" aimed at protecting the integrity of the judicial process or grand jury. *See Williams*, 504 U.S. at 45–46, 112 S.Ct. at 1741–42. Instead, they are agency regulations designed to govern employee conduct, violations of which may result in internal agency discipline.

*See* IRM §§ 751.12, 751.15(2). Failure to heed them, therefore, is not the type of "government misconduct" contemplated by *Bank of Nova Scotia* and *Williams*. Furthermore, the defendants were not prejudiced by Special Agent White's omissions because they did not give the government an improper advantage, impair the fairness of the judicial process, were not substantial influences on the grand jury's decision to indict, and do not raise a "grave doubt" about that decision.

IRS discipline for statutory violations by employees); *see also United States v. Michaelian,* 803 F.2d 1042, 1049 (9th Cir.1986); *Marvin v. United States,* 732 F.2d 669, 672–73 (8th Cir.1984). Adding the sanction of dismissal of an indictment would thwart Congress' and the IRS' respective wills. Regardless, the defendants simply failed to establish that Special Agent White violated any federal statute. With respect to McGuigan and Azeff's alleged illegal conduct, the statute, 26 U.S.C. § 7214(a)(8), only requires that the allegations be reported to the IRS and it is undisputed that they were. There is no evidence that Special Agent White improperly disclosed tax return or grand jury information. Even if Special Agent White committed those violations, which he clearly did not, none of them compromised the fairness of the judicial process or grand jury in any way. If they occurred, those actions may have embarrassed the defendants, but they could not possibly have "prejudiced" them within the meaning of *Bank of Nova Scotia* or *Williams.*

 Additionally, Special Agent White's obtaining documents from Accountant Cherry and McLaughlin, Piven and Vogel, without first issuing summonses does not violate 26 U.S.C. §§ 7602(a)(1) and 7609(a). There is no requirement that the IRS issue a summons every time it receives records from third parties. *See Speck v. United States,* 59 F.3d 106, 108 (9th Cir.1995). The defendants' reading of the statute would prevent the IRS from conducting informal investigations and mandate court intervention every time an agent seeks documents from anyone, no matter how willing to provide them that person may be. While it is true that a summons may be used to obtain documents, it does not follow that where there is voluntary compliance with a reasonable request by an IRS agent that proceeding without a summons is somehow unlawful or constitutes misconduct.

For those reasons, I will refuse the defendants' motion to dismiss the indictment pursuant to the federal courts' supervisory power.

## II. *The Motion to Suppress.*

 In the alternative, the defendants request that I suppress statements made by Russell McLaughlin Jr. during the noncustodial interviews conducted by Special Agent White and the documents provided by Accountant Cherry. Defendants Robin and Mark McLaughlin do not have standing to move to suppress Russell's statements. *Rakas,* 439 U.S. at 134, 99 S.Ct. at 425–26; *Payner,* 447 U.S. at 733–34, 100 S.Ct. at 2445–46. Suppression of those statements is not warranted because none of Russell McLaughlin Jr.'s constitutional or statutory rights were violated by Special Agent White's failure to warn him and, as discussed above, there is no evidence that Special Agent White acted in bad faith or coerced or intimidated him. *See Caceres,* 440 U.S. at 756, 99 S.Ct. at 1473–74. Furthermore, because the procurement of documents from Cherry was not improper, their suppression is not warranted.

## III. *The Motion to Dismiss the Superseding Indictment for Abuse of the Grand Jury.*

 Additionally, the defendants argue that the superseding indictment must be dismissed because it resulted from the government's improper use of the grand jury. The original indictment named only Russell McLaughlin Jr. and Mark McLaughlin as defendants. Subsequent to its return, the government presented more evidence to the grand jury and it returned the superseding indictment which included additional overt acts and named Robin McLaughlin as a defendant. The defendants contend that the obtaining of the superseding indictment shows that the government abused the grand jury process because, prior to the date of the original indictment, it was aware of the evidence against Robin McLaughlin. According to the defendants, this prior knowledge by itself establishes that the government used the grand jury improperly to conduct discovery and "freeze" the testimony of the witnesses presented to the grand jury between the return of the original and superseding indictments.

 Abuse of the grand jury occurs when the government uses it for the "sole or dominant purpose" of conducting discovery or preparing for trial on a pending indictment. *See, e.g., United States v. Leung,* 40

F.3d 577, 581 (2d Cir.1994); *In Re Grand Jury Matter,* 689 F.Supp. 454, 463 (E.D.Pa. 1987). The government does not abuse the grand jury process if, in addition to conducting a legitimate investigation, the government obtains additional evidence or freezes witnesses' testimony. *In Re Grand Jury Matter,* 689 F.Supp. at 463. Here, the government properly presented evidence to the grand jury which then elected to indict Robin McLaughlin. The mere fact that the government was aware of the evidence before the grand jury returned the superseding indictment does not establish that the government violated the defendants' rights to due process. I find that the defendants failed to overcome the presumption of regularity in the grand jury's proceedings and have not met their burden of establishing any improper use by the government. *See In Re Grand Jury Proceedings,* 632 F.2d 1033, 1041 (3d Cir.1980). Therefore, I will deny their motion.

IV. *The Motion to Dismiss the Indictment Against Robin McLaughlin on Statute of Limitations Grounds.*

■ Finally, Robin McLaughlin argues that I must dismiss the superseding indictment against her because count one, the only count in which she is named, does not allege an overt act in furtherance of the charged conspiracy within the six-year statute of limitations period.[4] She contends that the only overt acts within the limitations period, numbers seven and eight, charge "acts of concealment" which were not in furtherance of the goal or "central purpose" of the conspiracy and are, therefore, improperly charged. Because overt acts seven and eight properly allege acts in furtherance of the conspiracy charged in count one of the indictment, I will deny her motion.

Overt act seven charges that Russell McLaughlin Jr. failed to disclose the existence of the BIU bank account at New Jersey National Bank during an IRS interview conducted on October 20, 1989. Overt act eight charges that in or about early 1990, Russell McLaughlin Jr. and Mark McLaughlin lied to BIU's accountant about the nature of that bank account. The accountant, identified in the indictment as "W.S.C.," had prepared the 1988 BIU tax return. Both those alleged acts occurred within six years of the return of the superseding indictment and when the IRS was conducting an investigation of the tax liability of Russell McLaughlin Sr. and several McLaughlin family owned companies.

Specifically, count one of the indictment alleges that the defendants:

> conspire[d] to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service ... in the ascertainment, computation, assessment, and collection of revenue, specifically, income tax due and owing the United States from companies owned and operated by [the defendants].

(Superseding Ind. ¶ 20). The defendants argue that the central purpose or goal of the conspiracy was achieved when the 1988 BIU return was filed on March 15, 1989. I disagree. If proven, overt acts seven and eight would have the effect of furthering the conspiracy's central purpose or goal of "impeding, impairing, obstructing, and defeating" IRS attempts to ascertain and collect the income tax due. The fact that those attempts occurred after the filing of the false tax return on March 15, 1989 is not significant.

The defendants also request that I strike overt acts one, three, four, five, seven, and eight from the indictment because they are the result of Special Agent White's alleged misconduct. For the reasons stated in this opinion, I will refuse that motion.

V. *Conclusion.*

For the foregoing reasons, I will deny the defendants' pretrial motions.

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of December, 1995, it is ORDERED that:

1. The defendants' motion to dismiss the indictment based on government misconduct

---

**4.** Robin McLaughlin was indicted on May 11, 1995. Therefore, in order to avoid dismissal on statute of limitations grounds, the superseding indictment must allege at least one overt act after May 11, 1989.

and motion to dismiss the indictment based on improper use of the grand jury are hereby DENIED.

2. The defendants' motions to suppress the statements of defendant Russell McLaughlin Jr., the documents received from accountant Melvin Cherry, and evidence received by the grand jury after March 9, 1995, are hereby DENIED.

3. The defendants' motions to dismiss the superseding indictment against Robin McLaughlin and strike overt acts 1, 3–5, 7, and 8 from the indictment are hereby DENIED.

4. The defendants' motion to compel the testimony of Internal Revenue Service Special Agents Robert W. White, Robert Tengood, and William Fredericks is hereby DENIED.